CROOKSTON IMPROVEMENT CO. *vs.* ANNIE L. MARSHALL *et al.*

Submitted on briefs May 17, 1894. Affirmed May 25, 1894.

No. 8820.

**Findings supported by the evidence.**

Evidence *held* sufficient to justify the reformation of a deed.

**Reformation of deed erroneously made by mutual mistake.**

Although the terms of a deed are stated according to the intention of both parties, yet a reformation may be had if they were in error in respect of the thing to which these terms apply.

**Same—Where there is mistake on one side and fraud on the other.**

The mistake of one party, accompanied by fraud or other inequitable conduct of the other party, may be good ground for the reformation of a written instrument.

Appeal by defendants, Annie L. Marshall, L. D. Marshall her husband, Maria Munch, William Munch, her husband, Emma E. Kelsey and W. E. Kelsey, her husband, from an order of the District Court of Polk County, *Frank Ives, J.*, made January 13, 1894, refusing their motion for a new trial.

In the United States survey of the public lands where Crookston is now situated the elbows of the Red Lake River broke up into lots the ordinary government subdivisions. Lots six (6) and seven (7) in Section 25, T. 150, R. 47, and Lot four (4) in Section 30, T. 150, R. 46, comprised a portion of the west bank around which the river flowed on the north, east and south. Lot four (4) contained eleven acres and lay east of and adjoining the other lots and was the extreme eastern end of the peninsula. Julius Bjornstad owned these three government lots and laid out Sampson's Woodland Addition to Crookston upon the two western lots. In surveying and staking out the town lots he unconsciously got over the east line onto the government lot four (4) from forty to seventy five feet. He soon after on April 6, 1883, conveyed all three government lots to the plaintiff, Crookston Improvement Company, and it afterwards sold to settlers the eastern town lots in the plat and dwelling houses were built on several of them. On August 26, 1892, plaintiff conveyed to defendants, Annie L. Marshall, Maria Munch and Emma E. Kelsey for $1,200, government lot four (4), not knowing at the time that the platted town lots overlapped upon its western border. Discovering this fact it brought this action to reform the deed so as to except therefrom the strip along the west line of government lot four (4) covered by the town lots, claiming that on the sale its agent Sampson pointed out on the ground to the defendant's agent Munch the land intended to be conveyed as about eleven acres in the elbow of the river, between the platted town lots and the river and that stakes, fences and improvements marked the line between the platted addition and the unplatted land to the east. The court made findings of these facts and ordered judgment for plaintiff reforming the deed. Defendants moved for a new trial. Being denied they appeal.

*A. A. Miller,* for appellants.

To change the terms of a written instrument the evidence must be clear, onvincing and satisfactory. *Beard* v. *Linthicum,* 1 Md. Ch.

345; *Hunter* v. *Bilyeu*, 30 Ill. 228; *Bailey* v. *Bailey*, 8 Humph. 230; *Nevius* v. *Dunlap*, 33 N. Y. 676; *Lyman* v. *United Ins. Co.*, 2 John. Ch. 630; *Graves* v. *Boston M. Ins. Co.*, 2 Cranch 419; *Ford* v. *Joyce*, 78 N. Y. 618.

The mistake must be mutual and must be clearly made out by satisfactory proof, by evidence clear of all reasonable doubt.  *Guernsey* v. *American Ins. Co.*, 17 Minn. 104; *Sloan* v. *Becker*, 34 Minn. 491; *Gillespie* v. *Moon*, 2 John. Ch. 585; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290; *Miner* v. *Hess*, 47 Ill. 170; *Shattuck* v. *Gay*, 45 Vt. 87; *Newton* v. *Holley*, 6 Wis. 592; *Lake* v. *Meacham*, 13 Wis. 355; *Wells* v. *Ogden*, 30 Wis. 637.


*H. Steenerson*, for respondent.

The point of land in the bend of Red Lake River here in question comprised government lots Nos. 6 and 7, in Sec. 25, T. 150, R. 47, and Lot 4, in Sec. 30, T. 150, R. 46.   On April 16, 1883, it was all owned by Julius Bjornstad who platted Sampson's Woodland Addition to Crookston as lying on lots 5 and 6, but as staked out on the ground it extended from forty to seventy five feet over, eastward upon lot 4. Bjornstad and wife on April 16, 1883, conveyed all of the addition to plaintiff corporation and also conveyed to it lot 4 which lies directly east of the other tract and forms the extreme eastern point of the peninsula.   The parts of the addition overlapping onto lot 4 are the eastern portion of blocks 1, 2, 3 and 4.   In 1883 and 1885 plaintiff conveyed the most easterly lots in block 1 and in block 2, and in 1887 in block 3 to innocent purchasers, and these lots have been occupied, and valuable improvements made, prior to the conveyance in dispute.

The addition was surveyed by O. L. Hamery, surveyor, and proper monuments erected.   Stakes were driven at the corners of each block and streets plainly marked on the ground.   The east line of the addition was supposed to coincide with the west line of government lot 4, and there was, at the time of laying out and platting, a line blazed on the trees across this point of land at this place which was assumed to be the section line.   Afterwards there was a fence erected across the point nearly on this blazed line.   In the spring or summer of 1892 Mr. Munch acting for grantees came to Mr. Sampson,

president of the plaintiff, and asked to purchase the land east of the fence. Afterwards Sampson went with Munch on the ground and showed him the line and also showed him the fence and told him the line only ran a few feet from the house, and showed him the actual east line of Sampson's Woodland Addition as staked out on the ground. He took him over there two or three times while they were talking over the bargain.

Munch lived on block 7 in the same addition over seven years prior to this purchase. Three days after deed was delivered Munch got surveyor Ralph to run the section line and he located this line from fifty to seventy feet in on the platted portion. Then Munch built a fence on this line, fencing in the houses of these people and closing the streets, the fence running from river to river. Munch testifies that he did not know where the line was and did not know that government lot 4 overlapped the addition. That is just what Sampson was ignorant of, too, so there is no dispute but that the mistake was mutual. The lines actually run and marked upon the ground will control. *Holst* v. *Streitz*, 16 Neb. 249; *Evansville* v. *Page*, 23 Ind. 525; *Marsh* v. *Mitchell*, 25 Wis. 706; *Lampe* v. *Kennedy*, 45 Wis. 23; *McClintock* v. *Rogers*, 11 Ill. 279; *Diehl* v. *Zanger*, 39 Mich. 601.

MITCHELL, J. The only question in this case is whether the evidence justified the decision of the trial court that plaintiff was entitled to a reformation of its deed to defendants, having in mind the rule that to entitle a party to such relief the proofs must be clear, satisfactory, and convincing,—that a mere preponderance of evidence will not suffice.

One Bjornstad (plaintiff's grantor) owned government lots 6 and 7 in section 25, and lot 4 in section 30, lot 4 lying immediately east of lots 6 and 7. He platted Sampson's Woodland addition to Crookston as on lots 6 and 7, the east line of the addition being supposed and intended to be the line between those lots and lot 4, but, as staked out on the ground, the plat in fact extended, as has since been ascertained, from 40 to 75 feet eastward over upon lot 4. When the survey was made, stakes were stuck at the corners of the lots and blocks, including those on the east line of the plat. What was east of the platted portion was marked "Reserved for

Park," and was supposed to comprise the whole of lot 4. All of this property, both platted and unplatted, was subsequently conveyed to defendant, which had, prior to the deed in controversy, conveyed several of the lots on the east side of the plat to various parties, who had erected houses and made other improvements thereon.

The transaction between the parties to this suit was entirely conducted on behalf of the plaintiff by one Sampson, its president, and on behalf of the defendants by one Munch.

The evidence is very strong to the effect that what Sampson agreed and intended to convey was the unplatted portion of the land, he supposing that its west line was the west line of lot 4, or substantially so; that he so informed Munch, and pointed out to him the stakes on the east side of the plat as being the line of the land proposed to be sold and conveyed. Under this condition of things, the deed was executed, describing the premises as lot 4, which, for the reasons stated, includes from 40 to 75 feet of the platted ground. It is true the terms of the deed are stated according to the intent of both parties, but there was a mistake of both (taking the view of the facts most charitable towards Munch) in respect of the thing to which those terms applied, to wit, boundary.

What was intended was to convey the unplatted, and not any part of the platted, land, and they used the description they did because of their mistake in supposing that the west line of the unplatted land was the west line of lot 4. This was a mistake of fact which would justify a reformation of the deed. 2 Pom. Eq. § 853. The only other hypothesis is that Sampson was laboring under the mistake, and that Munch, knowing that fact, concealed the truth from him in order to secure a conveyance of land which he knew Sampson never intended or agreed to convey. This would be a case of a mistake of one party accompanied by fraud or inequitable conduct of the other party, which is also good ground for reformation of a written instrument. 3 Pom. Eq. § 1376.

Had the agreement been to convey lot 4, and had there been merely a mutual mistake as to its boundaries, this would have constituted no ground for a reformation of the deed. But, assuming the presence of good faith on the part of Munch, it seems to us that there was ample proof of mutual mistake; that is, that there was

a meeting of the minds of both parties—an agreement actually entered into—that it was the unplatted land that was to be conveyed, but that they used the description they did because of a mistake in respect to the land to which that description applied. With knowledge of the existence of the improvements made by plaintiff's grantees on several of the lots on the east side of the plat, it is hardly possible that Munch could have honestly believed that he was buying, or that Sampson intended to sell, those lots.

Order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 294.)