[No. 2599. Decided June 17, 1897.]

DAVID P. JENKINS, *Respondent*, v. JENKINS UNIVERSITY, SPOKANE COLLEGE AND HAMILTON S. WHITE, *Appellant*.

SUFFICIENCY OF APPEAL BOND — ERRORS AGAINST RESPONDENT — AUTHORITY OF ATTORNEY — GIFT TO EDUCATIONAL INSTITUTION — REVERSION — CONSIDERATION — REFORMATION OF MORTGAGE.

Where no exceptions to the sufficiency of an appeal bond have been taken in the trial court, the appellate court will not pass upon its sufficiency.

Affidavits in support of an objection to the sufficiency of an appeal bond, first raised in the appellate court, will not be considered by the court, if objected to.

The respondent is not precluded from questioning the right of an attorney to appear for an appellant and prosecute his appeal, in consequence of a failure to himself appeal from the order of the court when made.

Where the trustees of an educational institution neglect by resolution of the board or otherwise to authorize the employment of an attorney to appear for the institution in a suit in equity in which it is defendant, the court has power to authorize an attorney to appear for such defendant, especially when request therefor is made by some of its trustees.

Where a deed of lands to a corporation expressly provided that it conveyed the property as an endowment for educational purposes, and it is apparent from the whole tenor of the deed

that the land was intended as a gift and no consideration therefor moved from the grantee to the donor, upon a failure of the objects of the endowment, the land would revert to the grantor, even though no provision for reversion was contained in the deed.

That a grantee assumes an additional burden or sustains a loss, does not constitute a consideration for a deed, if there was no understanding to that effect between the parties.

A mortgage describing the tract intended to be mortgaged by metes and bounds may be reformed, when it appears that it was the intention of the parties to mortgage a tract upon which certain buildings stood, and that by mutual mistake the land was described so as to indicate only a portion of the buildings.

Appeal from Superior Court, Spokane County.—Hon. James Z. Moore, Judge. Reversed.

*R. J. Danson,* for appellant.

*Graves, Wolf & Graves,* and *Blake & Post,* for respondent.

The opinion of the court was delivered by

Scott, C. J.—In 1882 the plaintiff, being the owner of the real estate in controversy in this action, conveyed the same by deed to the defendant, the Spokane College, as a gift, the deed containing the following provisions:

" Provided, always, and this conveyance is made upon the express conditions following, that is to say, that the grantee herein shall erect and constantly and perpetually maintain on said premises a college of learning, teaching languages and sciences and the higher branches of education, and shall erect and maintain suitable buildings and provide and constantly maintain a competent and proper corps of instructors. The true intent and meaning of this condition is to provide against the establishment or maintenance of a nominal orgainzation but that it shall be an actual and successful institution of learning of the character aforesaid. And the said institution shall be fully organized and in operation within three years and nine

11—17 WASH.

months from the date of this deed. And in addition thereto the grantee may establish and maintain on said premises other institutions for educational purposes. And said premises shall be appropriated and used solely and exclusively for the several purposes aforesaid. And in the event of the grantee, its successors or assigns, failing to maintain and comply with any or all of the conditions aforesaid, said premises shall revert to and vest in the grantor, his heirs or assigns."

The donee entered into possession thereof and improved the same by building two large buildings thereon, one a brick and the other a frame, at an expenditure of some $25,000, and thereafter organized and conducted a college until January, 1892. At that time the college was embarrassed for want of funds and was some thirty thousand dollars in debt. At said time, in pursuance of a movement then under way to establish a non-sectarian university, the defendant, Jenkins University, was organized. Such negotiations and arrangements were entered into between the plaintiff, the Spokane College and the Jenkins University, that the college re-conveyed the real estate by quit-claim deed to the plaintiff, and he conveyed it to the university. The deeds were delivered on the ninth of said month. The university assumed the debts of the college, amounting to about $30,000. The deed recited that it was made in consideration of one dollar paid to the plaintiff " and various other considerations to him moving." Also, that it was made in trust and not otherwise, for the uses and purposes therein declared; and it contained the following provisions:

" It is the true intent and purpose of this conveyance to convey to the above named corporation the lands described as an endowment for educational purposes; the principal to be held and forever remain intact, but with power nevertheless to sell and convey by good deed any or all of said ground whenever in the opinion of the trustees of said university it shall be deemed desirable to do so, but in case

any or all of said land is sold the proceeds of whatsoever character received in payment thereof shall immediately become subject to the trust herein created and constitute a part of the whole of this endowment and forever held intact as principal.

" But the proceeds arising in any manner from the principal hereby created may be by the trustees of said university used and appropriated in such manner as they shall deem best to foster and promote the subject of education as contemplated in the organization of this university, and in using and investing the principal hereby created, or any part thereof, not more than ten thousand dollars ($10,000) in value shall ever be intrusted, loaned or placed under the control of any one person, association or corporation, at any one time, and that, in case of loss, at any time, by any means, of any part of said principal, as soon as the fact of said loss is ascertained, the trustees of said university shall at once commence crediting all proceeds of every kind arising from the other portions of this endowment to the principal until said principal shall be fully restored and made whole.

" But the foregoing portions of this deed are subject nevertheless to the following provisions:

" Whereas, The said university has assumed the payment of certain indebtedness of the Spokane College, which indebtedness has been scheduled and the amount not to exceed thirty thousand dollars ($30,000). And, whereas, the party of the first part in this instrument proposes to secure the payment of the said debt not to exceed the sum aforesaid, and for that purpose he hereby segregates and sets aside the following described part or parcel of the above described tract of land: Commencing at a point in the south line of College avenue where the west line of Madison street projected south would cross College avenue, and from said point running west on the south line of College avenue to where the east line of Jefferson street projected south would cross College avenue and running thence in a straight line south three hundred (300) feet; thence east the same distance as the north line and parallel

with the same to a point; thence north in a straight line to the place of beginning; the same being known as part of the Spokane College ground and where the buildings of said college are located.

"Now the party of the first part intends by this conveyance to authorize the party of the second part to use said last described piece of ground as a security for the payment of said indebtedness and for this purpose authorizes said second party to mortgage or incumber said property to secure the payment of said indebtedness. But it is the true intent and meaning that said property shall not be ultimately separated or segregated from this endowment and this endowment is not intended to pay said indebtedness but to secure the same in order to aid the said second party in the payment of the same, and it is hereby made obligatory on the party of the second part to see to it that this land or proceeds thereof shall not be lost to this endowment.

"If the party of the second part shall encumber or mortgage the said last described piece of ground for the payment of said indebtedness and the same shall be finally lost to this endowment, it shall constitute at once an indebtedness against the second party to the amount of the full value of the property lost, which shall carry interest and no part of the proceeds of the rest of this endowment shall be used by said second party until the part lost or last described shall be fully paid and restored to the principal.

"It is the true intent and meaning of this conveyance that in providing for the use of a part of this endowment as security for said Spokane College indebtedness, that it may be used as a security only and not to go into the hands of the second party as means to pay said indebtedness and when said Spokane College indebtedness is disposed of or when this last described segregated piece is restored to the principal it shall all be restored to the principal and covered by the general principles of this trust. This endowment is made with intent to aid in fostering and building up an important institution of learning in which no sectarianism shall be taught, and in which all useful branches

may be taught of learning, the great object being to investigate and ascertain the truth, and it is intended that the second party in using this endowment shall not be trammelled or circumscribed in carrying out these principles and in using the proceeds of this endowment for such purposes, but it is intended that the principal shall never be risked, put at hazard or frittered away in any manner or way whatsoever, and for said purpose and not otherwise said corporation shall have and hold said premises together with all the hereditaments and appurtenances thereunto belonging, or in any wise appertaining to said party of the second part, its successors and assigns forever."

Thereafter the university sought to obtain a loan of $30,000 to pay the indebtedness assumed, and succeeded to the extent of $10,000, which it borrowed from the defendant White. To secure the payment thereof it executed to him a mortgage on the three hundred feet square set aside in the deed for the purpose of securing the indebtedness assumed as aforesaid. At the time of the transfer of the property the university took charge of the school then in progress and conducted the same to the end of the school year in June, 1892; but it was not again reopened. The university had also received other donations of property, but they were subsequently re-conveyed to the donors, in consequence of the failure upon the part of the university to comply with the terms of such gifts in erecting another school building contemplated and in conducting the school, etc. The university incurred additional debts for taxes and otherwise, which remained unpaid, and also failed to pay the interest upon the loan aforesaid obtained from White, and he foreclosed his mortgage. It was afterwards ascertained that the description therein by metes and bounds did not cover the entire buildings, and the material proceedings in relation thereto will be hereinafter adverted to in disposing of his appeal.

The plaintiff brought this action to recover the real

estate, except that part described by metes and bounds mortgaged to White, and to have a reversion thereof declared on the ground that it had been conveyed by him in trust for the certain specified charitable purposes aforesaid, and that the trust had wholly failed of its purpose and could not be carried out. The university resisted, denying the same, and contended that the deed was an absolute one, for a valuable consideration, and that there could be no reversion. Under an order of the court the Spokane College and White, who was in possession of the entire buildings, were made parties defendant. Said last named defendant sought a reformation of his mortgage and the sheriff's deed executed in pursuance of the foreclosure sale, to make the same cover the buildings. The plaintiff was successful in the lower court and the cause is before us on appeal.

The first question to be considered is a motion by the respondent to dismiss the appeal herein of the Jenkins University, on the grounds that the appeal bond was not executed by said appellant or by any person by it lawfully authorized. Also, that the defendant, Jenkins University, had never appeared in the action, and, as affirmatively appeared from the record, had never authorized counsel to appear for it, and had not in fact appealed the cause and had never authorized or directed R. J. Danson, who appeared for it as its attorney, to appeal the same, and that his appearance for it was entirely unauthorized.

The points with reference to the giving of the appeal bond and the taking of the appeal are based upon affidavits of some of the trustees of the university first filed in this court, and said appellant objects to their consideration, and asks that the same be stricken from the record. We think they are not properly here for our consideration in passing upon these matters. Such a matter, going to the juris-

diction of the court, is not properly triable upon affidavits filed here, if objected to. No exception to the bond was taken in the lower court, nor was its sufficiency in any wise controverted. The defects relating to its execution, if any, were apparently as well known to the plaintiff then as now. At least nothing appears to the contrary, and under such circumstances he will not be heard to question it here for the first time.

As to the authority of the attorney, who represents said defendant and appellant, to appear for it in the action, it appears that the plaintiff raised this question in the lower court and upon the hearing there had the court found against him and held that such attorney was authorized to appear for the university and resist the action. Said appellant contends that the question cannot be reviewed here, for the reason that the plaintiff did not appeal therefrom. We do not think this point is well taken, for the judgment was ultimately rendered in favor of the plaintiff in the lower court, and there was nothing for him, at that time certainly, to appeal from. He is not precluded from raising the question upon this appeal in consequence of a failure to appeal from the order of the court when made, if the same were then appealable, and we are of the opinion that he may insist on the question being reviewed at this time. But we are satisfied with the finding of the lower court thereon.

It is conceded that a different rule obtains with regard to such matters, where charitable and educational institutions are involved, than does with reference to corporations formed for pecuniary benefit, as in the case of charitable and educational institutions no one has any special personal interest to protect. Respondent concedes that, if the trustees of such corporation fail to do their duty in its behalf in respect to litigation or otherwise, the power would lie

in a court of chancery, at the suit of some person interested, to compel a discharge of those duties; and that members of the board of trustees have no more interest therein as such, or as individuals, than have other citizens of the community. This being so, and the action being pending in a court of equity, we are of the opinion that the court had authority to authorize said attorney to appear for such defendant at the request of some of its trustees, even though no regular authority was shown therefor, such as a resolution adopted by the board of trustees; and, as this disposes of the further question with reference to the taking of such appeal, the motion is denied.

In considering the question as to whether or not the plaintiff was entitled to have a reversion of the property which is involved in the appeal of the university, it is first in order to determine some of the facts. By its sixth finding of fact the lower court found that the project of founding and conducting the university had been abandoned, and that the purposes contemplated by the trust established by the plaintiff's deed had wholly failed and were impossible of fulfillment. Said appellant contends that the court should have found otherwise from the evidence, but we cannot agree with him, for, in our opinion, the evidence is ample to sustain the finding. The university had incurred some $3,000 indebtedness additional to that assumed, and unpaid taxes upon its property had accumulated, amounting to more than $11,000. That part of the property covered by White's mortgage had become lost to it under the foreclosure proceedings. It had failed in erecting the contemplated building, and had been obliged to return to the donors a large amount of other property given to it. Its trustees had failed to meet for a long time and there was an apparent relinquishment of all efforts to found or conduct the university, and while some of the witnesses

said they thought the enterprise might be revived, it is evident that there was nothing more than a mere possibility of its happening, which was entitled to no weight whatever, as there was no likelihood of its taking place.

The next question is as to whether the deed from the plaintiff should be regarded as a gift, or whether the university bought the property for a valuable consideration. Of course, in the latter event, a different rule with regard to a reversion would apply. This question is not free from difficulty. The contention upon the part of the university that it paid a valuable consideration for the property is based upon the fact of the assumption of the $30,000 indebtedness of the Spokane College; but we are unable to find from the evidence that this was done by virtue of any agreement with the plaintiff, or at his request. It was apparently brought about under an arrangement with the Spokane College. To have amounted to a consideration it was necessary that there should have been some understanding to that effect between the plaintiff and the university. That the university assumed an additional burden or sustained a loss, is not alone sufficient. Under the express limitations of both deeds, none of the property could have been taken for this indebtedness with the exception of that part which plaintiff authorized to be mortgaged to secure it in the second deed. While this deed did not in express terms provide for a reversion, and while it contained a general warranty clause in addition to the provisions above set forth, and contained the general clause mentioned with reference to other considerations in addition to the nominal one of one dollar, and notwithstanding the fact that conditions subsequent, or forfeitures, are not favored in law, and that as to such matters deeds are generally construed against grantors, yet, under all the facts in this case, we are forced to the conclusion that the deed

should be regarded as a gift for the purposes of the trust only, and, the trust having failed, the property should revert to the plaintiff.

It is not contended that there was anything else in the shape of a consideration than the assumption of such indebtedness. The deed expressly provided that it conveyed the property as an endowment for educational purposes, and the recitation that, whereas the party of the first part proposed to secure the payment of such indebtedness and for that purpose " he hereby segregates and sets aside the following part and parcel," etc., is only consonant with a gift. Also, in the subsequent dealings and communications between the trustees of the university and the plaintiff, the land was treated as a gift or endowment, and, in a letter by the trustees to the plaintiff, it was spoken of as a gift and he was commended for his philanthropy in donating it.

A great many cases have been cited by the appellant on the subject of somewhat similar gifts and the. right to a reversion, but many of them are not applicable. In most cases the property had been conveyed to a municipal corporation and had been diverted to a different use from that contemplated in the deed. But here was an entire abandonment of the purposes of the trust, and apparently of the property, by the appellant, and the respondent's inquiry is a pertinent one, that if the land does not revert, what is to become of it? It cannot be taken to satisfy the debts contracted, with the exception of that part which was authorized to be mortgaged, and it could not be devoted to another like charitable purpose, the specific one having failed, as is sometimes done in the case of a devise. If the plaintiff is not entitled to a reversion of the property under such circumstances, who is to have it? The authorities generally agree that it is not essential that such a deed shall contain

a clause providing for a reversion, and, while it is to be construed against the grantor, it must not be construed so strongly as to make it impossible to have a reversion where none is expressly provided for in terms. It seems to us, considering all the facts and the terms of the gift, that the plaintiff is entitled to a reversion, and, even if the deed had contained an express condition to that effect, it could have made the case little, if any, stronger. 2 Pomeroy, Equity Jurisprudence (2d ed.), § 1032; 1 Perry, Trusts (4th ed.), §§ 159-160; *Gumbert's Appeal*, 110 Pa. St. 496 (1 Atl. 437); *Mott v. Danville Seminary*, 129 Ill. 403 (21 N. E. 927); *Danville Seminary v. Mott*, 136 Ill. 289 (28 N. E. 54); *Schlessinger v. Mallard*, 70 Cal. 326 (11 Pac. 729).

The judgment of the lower court is, in such respect, sustained.

As to the appeal of appellant White, the mortgage given him followed the description contained in the plaintiff's deed to the university, describing the tract by metes and bounds, with the statement that it was where the buildings were located; and the mortgage also contained a provision that the buildings should be kept insured for the benefit of the mortgagee. At the times the deed and mortgage were executed, and for a long time thereafter, the parties all supposed that the buildings were entirely situated upon this tract. Nor was it discovered that the fact was otherwise until after appellant White had foreclosed his mortgage, obtained a sheriff's deed to the property and had entered into possession of it, including all the buildings. The ground was unplatted and it was thereafter discovered that some fifty-nine feet of the brick building was not situated upon the tract as described by metes and bounds, but would have been upon one of the streets of the city had the same been extended. But the situation of the buildings was not so readily apparent as to charge the mort-

gagee with negligence; for it is apparent that neither the plaintiff nor the trustees of the college, nor the university, had discovered the true condition, or knew anything of it during the times in question and until some time after White had taken possession of the property. It is a fact that the tract by metes and bounds described the particular tract that was intended to be mortgaged, considering the fact that it was thought that the buildings were upon that tract. It is equally apparent from the instruments and from the negotiations between the parties at the time the loan was made, that it was understood and intended that the mortgage should cover the buildings, and the loan would not have been made otherwise, as the principal value of the buildings was in the one constructed of brick. This had been constructed as one building, with only one entrance, and the entrance was outside of the tract as described. The respondent contends, although the tract described was that upon which the parties supposed the buildings were located, and was that upon which they intended to have erected the buildings and intended to mortgage, that the fact that the buildings were not upon such tract was not such a mistake as would entitle the appellant to a reformation of the mortgage and the sheriff's deed to him thereunder. We have examined the cases cited by the respondent but do not think they support his contention. It is true the terms of the mortgage were stated according to the intent of both parties, but there was a material error upon the part of both of them in respect to the thing to which the terms applied, and we are of the opinion that the authorities sustain the appellant's contention in this respect, and that he was entitled to a reformation of the instrument. This would hold good as against the plaintiff, for he was present and participated in the negotiations for the loan. The mistake originated

in the deed which he gave.   In support of the above the following authorities are cited:  2 Pomeroy, Equity Jurisprudence, § 853; 1 Story, Equity Jurisprudence, § 140, note a; *Crookston Imp. Co. v. Marshall,* 57 Minn. 333 (59 N. W. 294); *Osborn v. Ketchum,* 25 Ore. 352 (35 Pac. 972); *Lewis v. Lewis,* 5 Ore. 169, 174.

The judgment of the lower court is reversed to the extent of according to appellant White the relief he asks for, and the cause is remanded accordingly.

ANDERS, REAVIS, GORDON and DUNBAR, JJ., concur.

### ON PETITION FOR RE-HEARING.

SCOTT, C. J.—On June 17th last an opinion was filed in this cause, reversing the same as to appellant White, the court taking the view that the description of the land mortgaged to said appellant should be reformed to include the brick building, and the cause was remanded with instructions to grant said appellant the relief asked for.   At that time the court was under the impression from the briefs and argument that said appellant was not asking for any more land, but only asked to have the lines changed so as to move the tract westward a sufficient distance to include said building.   The point as to just what the relief should be attracted little or no attention at the hearing, the main points in controversy being the right of the plaintiff to a reversion of the land and the right of appellant White to a reformation at all.   But it seems that in his counterclaim appellant White asked to have the land in controversy added to the former tract.   It is apparent that the plaintiff intended only to authorize the mortgaging of a tract 300 feet square, and it is also apparent that it was understood and represented that the buildings were situated upon that tract.   We are well satisfied with this, both from the deed and mortgage, and from the testimony introduced at

the trial. Consequently the appellant White should be entitled to a reformation of his mortgage to include the buildings, but the dimensions of the tract should conform as nearly as possible to the quantity of land intended to be mortgaged.

The record does not furnish the necessary information for us to specifically indicate the relief to be given in this, i. e., as to how far westward the west line of said tract should be moved in order to include the brick building and protect its use and enjoyment; for instance, it appears that the entrance to said building, it having but one, is outside the original tract as described, but it does not appear upon which side of the building the entrance is, and if the line was to be moved westward just sufficiently to include the building, it might cut the appellant off from the means of access to it. Furthermore, its situation with reference to window lighting may be such that if the line was to run right up against the building its value would be materially impaired in consequence of the possibility of another building being erected so close to it as to obstruct the window lighting. Said appellant asks to have a strip seventy-five feet wide added to said tract, which would give some fifteen feet or more in addition to that upon which the building stands. This would move the west line westward seventy-five feet, and if we were to move the east line of said tract westward the same distance, it might interfere with the other building thereon, as the proof does not show us just where upon the tract it is located.

Consequently, the cause will be remanded to the lower court with instructions to so modify the decree as to allow appellant White a reformation of the description of the tract as follows: That the west line of the tract shall be moved westward a sufficient distance, not to exceed seventy-

five feet, to include, and permit and protect the use and enjoyment of, the brick building, and the east line of said tract shall be moved westward a like distance, unless the same shall interfere with the other building upon said tract, in which case the east line is only to be moved westward as far as permissible without interfering with said other building, and the cause is remanded for such proceedings as may be necessary, including the taking of additional proof, to carry out these instructions.

DUNBAR, ANDERS, GORDON and REAVIS, JJ., concur.