NIELANDER & COMPANY v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Reformation of Lease:** EVIDENCE: *Mistake.* Plaintiff occupied part of defendant's right of way with a grain elevator, and applied, on notice that a lease was necessary, for a lease of a portion of its depot grounds for the purpose of maintaining a warehouse thereon. The precise location of plaintiff's property had been established by a survey, but the point of beginning was erroneously located in preparing the description, so that only a portion of lessee's property was within it. The lease was thereafter renewed, embodying the same mistake. The lessee continued to occupy the same grounds as before the lease, and made no use of any other conveyed by the lease. *Held,* that an error in the lease by mutual mistake was shown, justifying a reformation thereof.

NEGLIGENCE AS BAR TO REFORMATION. Where a local railroad agent, who was present when a survey was made for the purpose of securing the description of land to be included in a lease, was asked by those preparing the lease on what side of the street the beginning point of the property was located, and erroneously answered, which resulted in a mistake in the lease, such negligence will not prevent the railway company from reforming the lease, no injury thereby resulting to the lessor.

*Appeal from Allamakee District Court.*—Hon. L. E.

Fellows, Judge.

Wednesday, October 2, 1901.

The plaintiff's elevator, situated on the depot grounds of the defendant, was burned September 27, 1898, and action was begun for its value, with that of its contents, August 29, 1899, based on the alleged negligent operation of defendant's engine. The company, among other things, set up the defense that the premises were occupied under a lease exempting it from liability, and plaintiff denied that the ground on which the elevator stood was included therein. Thereupon the defendant filed a cross-petition in equity, averring a mistake in drafting the lease, by which the commencement point in the description contained therein had been stated to be the west instead of the east side of Oak street, and prayed for a reformation. Issue was joined therein, hearing had in equity, and relief denied. The defendant appeals.—*Reversed.*

*J. C. Cook, J. H. Trewin* and *M. B. Hendrick* for appellant.

*J. P. Conway* and *D. D. Murphy* for appellee.

Ladd, J.—I. Plaintiff occupied a part of defendant's right of way on the depot grounds from 1878 until 1894 without rent charge, as a tenant at will. In the latter year the company's agent advised the local manager of Nielander & Co. that the company would expect the firm to sign a lease for all business done on the right of way, and on April 24th the latter made this application to the defendant's division superintendent on a printed form prepared by the company: "The undersigned, Nielander & Co., P. O.

address, New Albin, Ia., desire to lease, subject to the company's usual terms and conditions, a part of its depot grounds at this station for the purpose of erecting and maintaining thereon a grain warehouse, and request that such ground may be located on the northwest side of main track and northwest side of station, and have a track frontage of 139 feet." Thereupon a lease for a term of three years, beginning July 1, 1894, was prepared by the company, and signed by the firm, though with this notation: "Agreeing to all but the second condition." The second condition, it should be said, exempted the company from liability for damages occasioned by the negligent operation of the trains. When informed that the lease would not be accepted with the notation, it was erased by plaintiff. It appears that the precise location of plaintiff's property had been fixed by a careful survey, using as a point of beginning the intersection of the center of the main track with the east side of Oak street. In preparing the lease a doubt arose as to whether this point was on the east or west line of the street, and, being referred to the local agent, who had assisted in the survey, he erroneously declared it to be on the west line, and the lease was mistakenly drawn so as to locate the property the width of the street west of where it really was. As a result, only the annex is within the description. At the expiration of three years, a new lease, embodying the same mistake, to continue one year, and until terminated upon 60 days' written notice, was executed. It seems, in the operation of the railroad general directions only are considered,—that is, the track leading toward Chicago is spoken of as east, and that toward St. Paul as west, regardless of the direction of the track locally,—and that the mistake was occasioned by the agent inadvertently reporting with respect to this custom, rather than the points of the compass. That there was a mistake on the company's part is manifest. But it is insisted that this was not mutual; that plaintiff merely acquiesced in what was proposed, and consented to the contract prepared by the company alone. Un-

questionably, land other than described in the lease must
be shown to have been the subject of this contract before it
can be reformed.   The inquiry in such a case is always di-
rected to the ascertainment of what was really the subject of
the agreement.   Had the parties the land described in mind
in making the lease, or some other?   If they had some other,
and the arrangement was made in reference to that, then
clearly there has been a mutual mistake for then their minds
have met, not with relation to the subject-matter described,
but another, not expressed.   The question is not whether there
has been a previous agreement in parol, but whether the sub-
ject of the agreement as made was that stated in the lease, or
some other, which the party through mistake failed to accu-
rately describe.   The policy of the defendant had evidently
undergone a change at about this time, possibly as a result
of the decision in *Griswold v. Railway Co.,* 90 Iowa, 265,
and all occupying right of way or depot grounds were re-
quired to procure leases with certain conditions, in which a
rental of $5 per annum was reserved.   The plaintiff's local
manager was advised of the necessity of the procurement of
a lease, and the application signed pointed out in a general
way the land on which the elevator and annex were situated.
True, the application was for ground "for the purpose of
erecting and maintaining thereon a grain warehouse," and it
should be said a new elevator replaced the warehouse on the
same foundation during the term of the first lease.   The firm
had occupied the ground for many years, and had no pur-
pose of making use of any other portion of the depot grounds.
What was it plaintiff applied for?   For the ground already
occupied, and on which to maintain its buildings in which
it continued its business, or some other, for which it had no
possible use?   Was ground on which the annex stood desired,
and not that under the elevator, when both formed part of
the same structure?   It is idle to claim, in the face of this
record, any other than that possessed as a tenant at will was
the subject of this application.   True, the answer avers that

the application was the result of a demand on the part of the company that a lease be taken. If so, what land did this demand refer to? To that occupied and in use by the plaintiff, or that in which it had no concern? Circumstances are often quite as potential as words in pointing out the subject of a contract, and we think these, apart from anything contained in the lease, fix the ground concerning which the parties understood they were contracting as that on which the building was located. That such was their understanding is strongly confirmed by their subsequent conduct. The description in the lease in controversy was copied from the first one drawn, and whatever occurred before its execution may be considered as bearing on the understanding with which it was entered into. Rent was paid for the three years during the continuance of the first lease. For what? The land occupied by plaintiff, and the track frontage, or that merely on which the annex stood, and other ground unused by plaintiff, with the elevator unprovided for? In October, 1895, the defendant granted permission to use a gasoline engine on condition that this should "not be construed so as to impair any of the conditions in lease of ground upon which your elevator is located." To this plaintiff expressly assented. The writing of the notation indicated a supposition that the building was included in the lease, else plaintiff would not have excluded the clause relating to damages by fire in signing it. The first lease stipulates that the premises are to be used and occupied exclusively as a site for a warehouse for storing and handling grain transported and to be transported over the line of the railroad company. Had the parties any understanding, then, prior to the execution of the second lease? But one conclusion can reasonably be drawn from the circumstances pointed out, and that is they were contracting with respect to ground occupied by plaintiff for so many years as tenant at will. Had defendant undertaken to enforce the removal of the part of the building not included in the description, could any one doubt the plain-

tiff's right to have the lease reformed so as to include it? On precisely the same principle the defendant may insist on the correction of this instrument to meet the understanding and intention of these parties in executing it. As tending to support our conclusion, see *Jenkins v. Jenkins University,* 17 Wash. 160 (49 Pac. Rep. 247); *Improvement Co. v. Marshall,* 57 Minn. 333 (59 N. W. Rep. 294).

II.   Appellee urges that relief should be denied because of culpable negligence on the part of the defendant. Possibly, the local agent was negligent in misinforming the superintendent. This cannot, however, be said of the latter. Indeed, there is more room for attributing to him special care in making inquiry, even after the survey, and apparently to make assurance doubly sure. It is not uncommon for people to become confused in the matter of directions, and it was evidently to avoid possibility of this that confirmation of what was shown in the plat was sought from one familiar with the locality for many years. Whether the superintendent made a minute on the plat of the side of the street at which they begun does not appear. The local agent had nothing to do with the preparation of the leases. He merely assisted the officers in charge of that work as called on, and we do not think the company should be denied relief because of the negligence of such employe. But for the oversight of some one, cases of this character would be rare. As said by Mr. Pomeroy in his work on Equity Jurisprudence (section 856): "It is not every negligence that will stay the hand of the court. The conclusion, from the best authorities, seems to be that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." In this case not only has the plaintiff suffered no prejudice, but the very purpose of defeating the relief demanded is to obtain an advantage to which it is not

-entitled. No one charged with the duty of contracting with plaintiff appears to have been remiss in the performance of his duties, and we think the case proper for the interposition of equity. The relief prayed should have been granted.— REVERSED.