[No. 23376.   *En Banc.*   June 10, 1932.]

JULIA A. CLARK *et al., Respondents,* v. WESTERN IN-
SURANCE COMPANY OF AMERICA, *Appellant.*[1]

*Ralph S. Pierce* and *Kenneth G. Smiles,* for appel-
lant.

*Everett O. Butts* and *Michael F. Ward,* for respond-
ents.

MITCHELL, J.—The owner of a residence property in
Seattle procured fire insurance in the sum of four
thousand dollars on the building for three years from
March 25, 1929, the policy being issued by the defend-
ant Western Insurance Company of America. There-
after, the property was conveyed to another, who, in
turn, sold it to Mrs. Julia A. Clark, a resident of Se-
attle, who executed and delivered to C. A. Jahns a
lease to the property for one year from August 9, 1929,
at forty-five dollars per month, payable monthly in
advance, and on that date received the rent for the
first and last two months of the term.   After that date,
the tenant paid rent for one month to Mrs. Clark.   The

[1]Reported in 12 P. (2d) 408.

building was practically destroyed by fire on December 21, 1929.

A standard mortgage clause was attached to the policy, providing that the interest of the mortgagee named therein should not be invalidated by any act or neglect of the mortgagor or owner, nor by any change of title or ownership, or occupation of the premises for purposes more hazardous than those permitted in the policy. After the fire, the mortgagee was paid three thousand dollars, to which it was entitled, out of the insurance money. The owners, Mrs. Julia A. Clark and her husband, claiming to have succeeded to the rights of the former owner of the property named as the insured in the policy, brought this action on the policy to recover the remaining one thousand dollars. The action was tried with a jury. The verdict was for the plaintiffs in the amount sued for. The defendant has appealed from a judgment on the verdict.

Several defenses were interposed, all of which appellant contends were established. Only one of them need be considered and discussed, in our view of the evidence, with reference to which appellant protected its rights by motion for a directed verdict at the close of all the testimony, and by a motion for a judgment notwithstanding the verdict; that one defense being that, at and for some time prior to the fire, the property was occupied and used as a distillery of intoxicating liquors, in violation of a warranty contained in the policy which, after describing the street and house number of the property, states that the insurance is written

"On the shingle roof frame building and its additions (if any) connecting and in contact therewith, *while occupied only for dwelling house purposes.*"

The undisputed evidence showed as follows: That the building was a modern, five-room house with a fire

place and a basement; that, immediately upon taking the lease of the premises on August 9, Jahns, who at that time had a wife and two children, ordered gas for use in the building through a two-inch service pipe installed by his order sufficient for gas greatly in excess of ordinary requirements for such a residence, and that thereafter his bills for gas were, August 15 to September 13, $101.13; September 13 to October 14, $116.89; October 14 to November 13, $121.13; and November 13 to December 18 (three days before the fire), $159.21. There was no testimony that the tenant's wife or children were ever seen on the place, or that he or they were seen at or after the fire.

When the fire was extinguished, the frame of the house was left standing, except that the north wall appeared to have been blasted or blown out, on which side the upper floor had sagged or settled to the lower floor. A large still in the basement, though wrecked in the fire, appeared to have been about five or five and a half feet in diameter. Several witnesses testified to having seen a large number of barrels, new and old, about the place, some in the basement and others on the upper floors. Two witnesses counted forty barrels containing mash on the upper floors, one of which witnesses testified there were thirty-two other barrels outside the building. Only one witness testified concerning furniture in the house, to the effect that he could tell nothing about it except two trunks, each of which contained some clothing that had been worn.

Respondents contend that the holding in the case of *Ragley v. Northwestern National Insurance Co.*, 151 Wash. 545, 276 Pac. 537, is decisive of the present case, in their favor. The cases are very different. In that one, there was substantial evidence that the house was occupied as a dwelling at the time

of the fire; that the houshold furniture, most of which belonged to a former occupant of the house, though somewhat damaged by the fire, was seen in the building at that time; that the former occupant of the premises continued to get his mail daily from a box on the porch; and that, immediately after the fire, articles of food, including bread, were noticed in the kitchen.

But there is no need of further noticing the facts in that case. Each case must be decided on its own facts. In that case, a clause in the policy like the one we are now considering and another clause against increase of hazard ''by any means within the control or knowledge of the insured,'' were discussed together to ascertain if the words ''while occupied only for dwelling house purposes'' should be read literally. The result was to approve an instruction given the jury in that case as follows:

''You are instructed that, if you find from the evidence that the building covered by the policy of insurance in this action was being used generally as a place for the manufacture of intoxicating liquor or that one of its principal uses was such manufacture of intoxicating liquor, then your verdict in this case must be for the defendant.''

In approving the instruction, it was said:

''When we consider the great number of uses which may be made of a house, and things which may be done therein incident to its occupancy as a home, it at once becomes apparent that the words 'occupied only for dwelling house purposes' are not capable of very exact meaning or application.''

Applying the doctrine of that case to the facts in this one, as the same were established by the undisputed testimony of disinterested witnesses, it cannot in reason be questioned that the use to which the house in this case was put, either generally or as one of its

principal uses, at and prior to the fire, was the manufacture of intoxicating liquor, and that it must be so held as a matter of law.

Each party to the policy is entitled to the benefits and protection of his contract. The acceptance of the insurance by the insured upon the warranty "while occupied only for dwelling house purposes," was an essential and prominent feature of the contract for the protection of the insurer, and, in our opinion, was clearly violated in this case by the pronounced change in the physical hazard, whether considered from the standpoint of the general use or one of the principal uses of the property at and before the fire.

Reversed and remanded, with direction to the trial court to grant appellant's motion for a judgment notwithstanding the verdict.

TOLMAN, C. J., MAIN, HOLCOMB, BEALS, HERMAN, and MILLARD, JJ., concur.