[No. 25545. Department One. August 12, 1935.]

J. F. McCulloch *et al., Respondents,* v. Northwestern Mutual Fire Association, *Appellant.*[1]

*Shank, Belt & Rode,* for appellant.
*Leo J. Brand* and *B. Gray Warner,* for respondents.

Beals, J.—Plaintiffs, J. F. and Selina McCulloch, are the owners of an acre of land, upon which stands a ten room dwelling, the property being located in Seattle, on the southerly portion of what is known as the "Beacon hill district." The house was fully furnished, and about February 1, 1933, was rented to persons representing themselves to be Mr. and Mrs. Taylor and Mr. Reed.

March 17th following, the house caught on fire and suffered considerable damage. Immediately upon the starting of the fire, the tenants decamped, leaving so

[1]Reported in 48 P. (2d) 217.

hurriedly that they abandoned several articles of clothing. They also left behind them a three hundred gallon still, capable of producing one hundred fifty gallons of alcohol every twenty-four hours and completely equipped for the manufacture of intoxicating liquor, from forty to one hundred five-gallon tin cans, and other equipment appropriate to a distillery.

Defendant, Northwestern Mutual Fire Association, a corporation, had for many years insured the dwelling and the furniture against loss by fire. The amount of damage was fixed by agreement between the parties at $723.54. The defendant, however, denied liability, contending that the property had been used for an illicit distillery, and that this use placed the premises without the protection of the fire insurance policies, which provided that they should be effective while the building was "occupied only for dwelling house purposes."

The issues having been made up, the case was tried to a jury, which returned a verdict in plaintiffs' favor. From a judgment entered on this verdict, defendant has appealed, assigning error on the overruling of its challenge to the sufficiency of the evidence, which it interposed at the close of respondents' case, upon the denial of its motion for a directed verdict at the close of all the testimony, upon the denial of its motion for judgment notwithstanding the verdict, and upon the entry of the judgment. The appeal presents the question of whether or not appellant is now entitled to judgment in its favor as matter of law, notwithstanding the verdict of the jury.

Appellant argues that it clearly appears from the evidence that the premises, at the time of the fire, were used generally for the purpose of conducting an illicit distillery; and that, this being one of its principal uses, the policies of fire insurance which appellant had writ-

ten were rendered void, and that respondents cannot recover thereon.

The evidence clearly indicates that, at and for some time prior to the fire, the house was occupied by the Taylors and another man, who gave his name as Reed. These three persons undoubtedly lived in the house, sleeping and eating there. Meals were prepared, the washing was hung out on the line, and to general appearances the house was being put to normal use, although one of respondents' witnesses testified that he frequently detected the odor of mash coming from the premises, and that this smell could be detected any time that the wind was blowing from the right direction. When the tenants abandoned the place, they left used dishes in the kitchen sink, some provisions in the pantry, and a few articles of clothing.

Respondents' son testified that he saw the house shortly after the fire; that the still had been operated by a gasoline burner in position thereunder; and that the fire was right at the still. His supposition was that, under pressure, one of the seams of the still had opened, and that the mash had run down on to the plates and became ignited. There is other testimony to the same effect. It was evident that the fire burned upwards through a hole in the floor, which the Taylors had cut for use in connection with the still. This witness also testified that, in a bedroom above the still, which the tenants had evidently used as a storeroom, there were about one hundred five-gallon cans piled against the wall, and two large stone crocks.

A government investigator, testifying for appellant, stated that, as a part of the distillery above referred to, there were four large mash vats, together with mash pumps, motors and other necessary equipment; that the plant was larger than the average illicit still; that, with one exception, the tanks were full, and there was

some alcohol. Other witnesses testified to the nature of the still, its capacity, and the appliances and material, including twenty-four hundred gallons of mash and half a dozen or so barrels used in connection therewith, found on the premises after the fire.

Several witnesses called by appellant testified that the house, while completely furnished, did not have the appearance of being used as an ordinary dwelling is used, but that the closets, dressers, etc., were empty, and that there was only a very small amount of food in the kitchen. One witness testified that, just before the fire became manifest, he saw Mrs. Taylor hurriedly leave the house, carrying a suitcase. A representative of the city water department testified that the charge for water furnished the house in question from June 24 to September 27, 1932, was $1.75; from September 27 to December 27, 1932, the bill was $2.20; for the next three months period, to March 28, 1933, the bill was $6.25, indicating the use of almost three times as much water during those three winter months as was used during the same length of time in the summer or fall. Another of respondents' witnesses testified that, on one occasion during the Taylor's occupancy of the house, he saw a load of sugar delivered there, and wondered at the large amount of sugar and its purpose.

Respondent Selina McCulloch testified that the house stood rather alone, without close neighbors. She also stated that, after the fire, she had learned that a prior tenant of her house had, some two years before, operated a still therein, and that the tenant had been arrested, charged with some offense against the prohibition law.

There can be no doubt but what the three persons referred to as tenants of the house occupied the same after leasing the premises from respondents. We think it equally clear that their occupation of the prem-

ises was merely incidental to their use thereof as an illicit distillery. They gave respondents to understand that they intended to operate a sanitarium in the house, but it clearly appears that no steps ever were taken to use the place for any such purpose. All of the testimony indicates that the tenants used the house rather as a camping place than as an ordinary dwelling.

This court has recently decided two cases which bear strongly upon the question to be here determined. One of these cases is relied upon by respondents; the other by appellant. Respondents cite the case of *Ragley v. Northwestern National Ins. Co.*, 151 Wash. 545, 276 Pac. 537, in which this court affirmed a judgment based upon the verdict of a jury in favor of an insured, the owner of a house damaged by fire under circumstances similar to those disclosed by the record before us. It was held that the insurer's contention that, in order to render the policy void, it was necessary only to show that intoxicating liquor was being manufactured in the house at the time of the fire, "though not to the extent of such manufacture being one of the principal uses of the house," was unsound, in consideration of the great number of uses to which a house may be put and the things which may be done therein incident to its occupancy as a home. In the case cited, the insurer also contended that, upon the record as a whole, the cause, as matter of law, should be determined in its favor, and that the trial court had committed reversible error in denying its motion for judgment in its favor notwithstanding the verdict. In holding against the appellant, this court said:

"It is contended that the evidence is such as to call for a disposition of the case upon the merits in favor of appellant, as a matter of law, and that the trial court should have so adjudged in response to appellant's motion for judgment notwithstanding the verdict. There was some rather convincing testimony to the

effect that Wilson, who was occupying the house as Neilsen's tenant, was, at the time of the fire, manufacturing intoxicating liquor therein; but we think the evidence was not such as to call for deciding as a matter of law that intoxicating liquor was being manufactured in the house as one of the then principal uses of the house.

"We have this additional fact appearing in the evidence, so as to warrant the jurors in believing, as they evidently did, that the house was rented by Neilsen to Wilson for dwelling house purposes; that neither Ragley nor Neilsen had any cause to believe that the house was going to be used for any other purpose; and that neither of them had any cause to believe, at any time up to the time of the occurrence of the fire, that the house was used for any other purpose. Under such conditions, neither Ragley nor Neilsen would be chargeable with the manufacture of liquor in the house at the time of the fire, even though such manufacture was such as might, as against the tenant Wilson, be regarded as one of the principal uses of the house by Wilson. (Citing cases.) The policy seems plainly to contemplate that the house might be occupied by a tenant. We think the duty of Ragley and Neilsen went no further than that they would not rent the premises to anyone other than for 'dwelling house purposes,' and would not knowingly permit its use for any other purpose."

In the case at bar, the record beyond question shows that respondents' house was, at the time of the fire, being used primarily as a place for the manufacture of intoxicating liquor. The evidence is undisputed that such was the case. The size of the still, the amount of equipment ancillary thereto, the cutting of a hole in the floor to permit the installation of the pipe from the still, the use of much of the house for storage space for the barrels and five-gallon tins, the ever-present odor of mash, the large amount of water used on the premises during the winter months, and the quantity of sugar which had been taken into the house during

its occupation by the Taylors, all demonstrate that the principal purpose of the occupany was the illicit distillation of liquor. The giving of a false reason for renting the premises is another indication that the tenants never intended to use the house for ordinary living purposes.

In this case, as in the *Ragley* case, it is doubtless true that the owners of the premises were entirely innocent, and in good faith rented the property to the Taylors and Reed.

In the later case of *Clark v. Western Ins. Co. of America,* 168 Wash. 366, 12 P. (2d) 408, this court, sitting *En Banc,* reversed a judgment in favor of the owner of the premises and remanded the cause with instructions to grant the insurer's motion for judgment in its favor notwithstanding the verdict. In the case now under discussion, as in the *Ragley* case, and also in the case at bar, the insurance policies provided that they should protect the building "while occupied only for dwelling house purposes." It appeared that the owner, Mrs. Clark, rented her house to one Jahns for one year, from August 9, 1929, the building having been practically destroyed by fire during the month of December following. It appeared from undisputed testimony that, immediately after renting the premises, the tenant had the house connected with a gas main, and that thereafter his bills for gas were far in excess of any normal use. After the fire, a large still was found in the basement, and many barrels, forty containing mash, were in or around the house. This court, in discussing the *Ragley* case, referred to the fact that, in that case, there was substantial evidence that the house was occupied as a dwelling at the time of the fire. In the case last cited, this court, after calling attention to the proposition that "each case must

be decided on its own facts," and referring to the *Ragley* case, said:

"Applying the doctrine of that case to the facts in this one, as the same were established by the undisputed testimony of disinterested witnesses, it cannot in reason be questioned that the use to which the house in this case was put, either generally or as one of its principal uses, at and prior to the fire, was the manufacture of intoxicating liquor, and that it must be so held as a matter of law."

The case now before us clearly falls within the rule laid down in the case last cited. While it is true there was much furniture in respondents' house, that furniture belonged to respondents and was rented with the house. The fact that the house was rented furnished instead of unfurnished makes no difference in determining the question here presented. The doctrine of the *Ragley* case applies in instances where a dwelling is used primarily and principally as a home. The operation of a small still therein, or some similar activity, if simply incidental and on such a scale as to be apparently uncommercial in its scope, should not change the basic and primary use to which the house is devoted.

On the other hand, the installation of such a large still as was installed in the premises of respondents here, the alteration of the dwelling to suit the convenient use of the still, the large amount of ancillary appliances present and their manifest use up to the reasonable capacity of the plant, coupled with the excessive amount of water delivered on the premises and the large amount of sugar delivered thereto, and, on the other hand, the comparatively small amount of clothing and personal effects taken into the premises by the tenants, and the insignificant amount of food left by them therein, all point unmistakably to the fact that the tenants devoted the house primarily

to the distillation of liquor, and not to use as a home, in the ordinary sense of the word. Naturally, they lived there, but manifestly the main use of the premises was as a distillery.

We conclude that this case falls within the rule laid down in the case of *Clark v. Western Ins. Co. of America, supra.*

■ Respondents, in their brief, call attention to the fact that it appears from the evidence that the insurance policies sued upon were issued in consideration of a premium amounting to sixty dollars, and state that appellant at no time tendered or offered to repay any portion of this premium. Respondents do not call attention to any portion of the record in which any such question was pleaded or was presented to the trial court. No matter concerning this premium is before us for review.

The judgment appealed from is reversed, with instructions to the trial court to grant appellant's motion for judgment in its favor notwithstanding the verdict.

MAIN, TOLMAN, STEINERT, and GERAGHTY, JJ., concur.