### VAN METER et al. v. FRANKLIN FIRE INS. CO. OF PHILADELPHIA, PA.

No. 11535.

Circuit Court of Appeals, Ninth Circuit.

Nov. 17, 1947.

Jones & Bronson and Albert Olsen, all of Seattle, Wash., for appellants.

Clarke, Clarke & Albertson, by George Clarke, all of Seattle, Wash., for appellee.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

This action was brought in the Superior Court of the State of Washington and was removed to the United States District Court because of diversity of citizenship.

Van Meter, Granning and Treece, appellants here, are individuals suing on a fire insurance policy, issued by the Franklin Fire Insurance Company, covering certain logging equipment. On the face of the policy the insurance covered the property only while in the State of Washington. The equipment was moved to Oregon and later Redding, California, where it was damaged by fire on October 3, 1945. Recovery for loss in the fire is sought. Reformation of the policy is asked upon the ground that the policy provisions restricting coverage to the State of Washington were inserted contrary to the common understanding and agreement which the contract was intended to state, and further, upon the ground that the defendants so conducted themselves since the issuance of the policy as to be estopped to apply the coverage restriction mentioned. A jury trial was requested by appellants and refused, and such refusal is claimed as error. At the close of the case the defendants moved to dismiss on the ground that the facts and the law failed to show a right of recovery against appellee. The motion was granted and the court entered a judgment of dismissal. Motion for a new trial was denied and Van Meter, Granning and Treece appeal.

The salient facts of the case may be stated as follows. Appellant, Van Meter, engaged in the logging business, had on

various occasions financed the acquisition of equipment through the American Discount Company and had obtained insurance thereon through "Lipman & Esfeld," as agents for the Franklin Fire Insurance Company, the appellee. These two companies, the Franklin Fire Insurance Company and the American Discount Company, shared office space. Van Meter had for five years dealt with Sol Esfeld when doing business with either one or the other of these firms. The latter had up to April, 1944, been the sole owner of "Lipman & Esfeld," and the policies issued to Van Meter were signed by Sol Esfeld. At the time the policy with which we are here concerned was issued, Esfeld was no longer the owner of the agency, which was being continued under the name of "Lipman & Esfeld." Van Meter claims to have had no knowledge of this fact. Abe Goldman and Morton Pinch were the new owners of the insurance agency, but Esfeld, who was an officer of the American Discount Company, continued to do business for the agency.

Van Meter claims that Esfeld agreed that a policy of insurance would be issued, which would cover his property wherever located, and appellee does not agree. A policy was issued and turned over to the American Discount Company who had loaned money on the insured property. Van Meter did not actually see the policy, and several months after its issue he approached Esfeld upon the subject of loaning purchase money on a new truck, then informing Esfeld that he had a logging job in Oregon. Esfeld declined to make the additional loan, suggesting that refinancing be done in Oregon, and thereafter it was done through Granning and Treece, a Portland, Oregon, firm. The loan with the American Discount Company was paid by Granning and Treece, and the "papers, titles, notes, mortgages, insurance policies and other papers" were requested to be forwarded in accordance with an authorization signed by Van Meter. At the time of the refinancing, the property was in the State of Washington, and was then moved to Oregon.

Considerable reliance is placed on certain correspondence as proof of waiver and estoppel as well as proof that the understanding between the parties was that the insurance was not limited to the State of Washington. There is evidence that the insurance agency knew of the removal of the property outside of Washington; however, since the law of Washington (discussed subsequently) does not permit the enlargement of a coverage restriction by estoppel or waiver, the point raised is not material to the case.

The first question is whether the trial court erred in holding that the coverage of an insurance policy may not be extended from one state to another by waiver or estoppel, the judge holding that such an extension may be had only through reformation. On the face of the policy the restriction coverage provided for protection only while the property was located in the State of Washington. There was a general territorial coverage provided in the policy, but a rider was attached, limiting the coverage to Washington. The appellants' property was first moved to Oregon and subsequently to California, where the property was damaged by fire. We do not reach the question of whether the facts are sufficient to establish an estoppel or waiver for the reason that Washington law does not authorize estoppel or waiver in such a case. The trial court found that the insurance was restricted to property within the State of Washington, and that it would not be protected under the doctrine of estoppel or waiver in another territory. The laws of Washington are applicable. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The Washington Supreme Court has unequivocally stated that the assured may not in an insurance policy extend the coverage stated in a policy, but that reformation is the only remedy. The court did recognize that waiver or estoppel may operate to prevent an insurance company from urging the breach of warranty or condition which would otherwise void a policy. The claim was presented in the trial court that the provision in the instant case is a condition rather than a coverage restriction and hence within the doctrine of waiver or estoppel. The policy in providing that the equipment is covered only while in the State

of Washington constitutes a coverage restriction in that it covers property only within a given area, and the trial court was correct in so ruling.[1]

The next issue presented is whether the trial court erred in holding that the facts do not entitle the appellants to a reformation of the policy. It is first contended that Sol Esfeld, with whom Van Meter dealt for the insurance policy, was not an ostensible partner of the firm of "Lipman & Esfeld," but he had actual authority to arrange insurance commitments; secondly, that Esfeld's and Van Meter's minds did not meet as to the limitation contained in the rider attached to the policy, that is, there was no understanding that the broad territorial coverage contemplated in the printed portion of the policy was to be in any way limited. Appellants urge that Esfeld agreed to issue a policy (through "Lipman & Esfeld,") which would cover any place in the United States. However, the trial court weighed the evidence adduced upon this issue and there is no justification for our holding that the findings of the trial judge constitute plain error. Furthermore, upon our own independent appraisal of the evidence, we think the trial court decided the issue correctly.

A reading of the policy would have disclosed the limiting provision, with the word "Washington" capitalized and placed therein, and we can hardly agree with appellants that the trial court erred in refusing to hold that the limitation was inserted through inadvertence and contrary to the agreement of all concerned. The later actions of the parties suggest, at the most, a conflict in the evidence, which is insufficient for purposes of reformation. The fact that appellant, Van Meter, did not see the policy prior to the loss does not aid him. The policy was held by the finance companies, but this did not negative his right to inspect it; secondly, these companies held their rights to the policy through Van Meter and at his instance. The fact that all failed to notice a provision, which could readily be seen, and take exception thereto does not prevent the operation of the provision.[2]

In the posture of the case, after the above holdings, it is apparent that the questioned right of jury trial is not reached and that the case was properly dismissed. Affirmed.

---

[1] Carew, Shaw & Bernasconi, Inc., v. General Casualty Co., 189 Wash. 329, 65 P.2d 689. At page 692 of 65 P.2d, the court states that "One may not, by invoking the doctrine of estoppel or waiver, bring into existence a contract not made by the parties and create a liability contrary to the express provisions of the contract the parties did make. The general rule is that, while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet, under no conditions, can the coverage be extended by the doctrine of waiver or estoppel." This case is cited and quoted from in Fidelity & Guaranty Fire Corporation v. Bilquist, 9 Cir., 99 F.2d 333, at page 335, and the appellate court states " * * * where the case is not one of forfeiture for breach of a warranty or condition, but a case regarding the extent of the coverage, the estoppel principle does not apply, and recovery may not be had without reformation of the policy. Johnson v. Franklin Ins. Co., 90 Wash. 631, 156 P. 567; Reynolds v. Pacific Marine Ins. Co., 98 Wash. 362, 167 P. 745, L.R.A. 1918B, 427; Id., 105 Wash. 666, 178 P. 811; Charada Inv. Co. v. Trinity Universal Ins. Co., 188 Wash. 325, 62 P.2d 722; Carew, Shaw & Bernasconi, Inc., v. General Casualty Co., supra.

"The applicability of the estoppel principle is dependent upon whether the provision 'while occupied only for dwelling house purposes' and the one 'while contained in the above described dwelling house building' are conditions or restrictions on coverage. We think they are the latter, and recovery cannot be had without reformation. Johnson v. Franklin Ins. Co., supra; Reynolds v. Pacific Marine Ins. Co., 98 Wash. 362, 167 P. 745, L.R.A.1918B, 427; Clark v. Western Ins. Co. of America, 168 Wash. 366, 12 P.2d 408; McCulloch v. Northwestern Mut. Fire Ass'n, 183 Wash. 5, 48 P.2d 217; Carew, Shaw & Bernasconi, Inc., v. General Casualty Co., supra." This, in our opinion, conclusively rules out any claim of waiver or estoppel.

[2] In the case of Carew, Shaw & Bernasconi, Inc., v. General Casualty Co., 189 Wash. 329, 65 P.2d 689, 692, the court stated that "a written instrument, which constitutes the contract between two parties, will be reformed only when fraud or mistake is shown by clear, cogent, and convincing evidence. If, as in the

case at bar, the evidence is in sharp conflict or any doubt exists as to the intent of the parties, reformation will not be granted." 65 P.2d 693, at page 692. "* * * The appellant has not shown by clear, cogent, and convincing testimony that there was mistake or fraud in the issuance of the policy requiring the reformation of that contract. The trial court was in a better position than we to determine the credibility of the witnesses. The testimony was conflicting. In granting the motion for judgment non obstante veredicto and in entering the judgment of dismissal, there can be no conclusion other than that the trial court was of the view that mistake or fraud was not shown. We have uniformly held, in cases such as the one at bar, that, unless it be made to clearly appear that the evidence preponderates against the trial court's conclusions (the evidence does not so preponderate in this case), we will not disturb the finding or judgment of the trial court." 65 P.2d at pages 693, 694. "* * * Appellant is presumed and is required to know the provisions of the insurance contract, as it would any other written contract into which it enters. It will not do for appellant's vice-president to say that he did not read the policy. Whether he or any of the other officers or agents of appellant read the policy is immaterial. It was appellant's duty to read the policy, and the law says that that was done. * * *" 65 P.2d at page 694.

In Fidelity & Guaranty Fire Corporation v. Bilquist, 9 Cir., 108 F.2d 713, 715, the court gives the Washington rule of law as follows: "The Washington Court has expressed this well established rule of law in the case of Herzberg v. Moore, 153 Wash. 641, 280 P. 41, 42, as follows:

"'"Reformation is a proper remedy where the parties have reached a definite and explicit agreement, understood in the same sense by both, but by their mutual or common mistake, the written contract fails to express the agreement." Section 11, Black on Rescission and Cancellation (2d Ed.).

"'"Where no question of fraud, bad faith or inequitable conduct is involved and the right to reform an instrument is based solely on mistake, it is necessary that the mistake be mutual, and that both parties understood the contract as the complaint or petition alleges it ought to have been, and as in fact it was except for the mistake." 23 R.C.L. § 20, p. 327.'" That court concluded that a finding that a policy entered into which is ineffective will never justify the creation of an effective contract never agreed to by the parties.

As further stated in Fidelity & Guaranty Fire Corp. v. Bilquist, supra, the rule is that an insured must use reasonable diligence to apprise himself of the terms of his contract and if not in accord with his original understanding to them promptly advise the other party or parties to the contract of his contention. At page 716 of 108 F.2d, the court stated: "The law of Washington is well settled to the effect that one who will not use the opportunities open to him to determine what his contract is, and if such opportunities would probably have revealed the defect, he cannot have reformation for mistake. In Johnston v. Spokane & Inland Empire R. Co., 104 Wash. 562, 177 P. 810, 812, the court said: 'We have always held that a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to read the instrument, cannot claim to have been misled concerning its contents or to be ignorant of what is provided therein.' And again in the same case: 'The means of knowledge are equivalent to knowledge. A clue to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to a discovery.'

"* * * Certainly the insured has some duties as well as the insurer. The insured owes the obligation to examine his policy and to inform the insurance company wherein it is not as he intended it." In the instant case Van Meter had considerable time in which he might take the opportunity to examine and make objections to his policy and the fact that the policy was in the hands of the two financing companies during this time did not prevent or interfere with his right and duty. See Department of Labor & Industries v. Northwestern Mutual Fire Ass'n, 13 Wash.2d 288, 124 P.2d 944.