[No. 15198.  Department One.  February 28, 1919.]

## S. B. REYNOLDS *et al., Respondents,* v. PACIFIC MARINE INSURANCE COMPANY, *Appellant.*[1]

APPEAL AND ERROR (175)—TIME FOR TAKING—EFFECT OF MOTIONS. Where a verdict was rendered April 24th and judgment withheld pending motions for judgment *non obstante* and for a new trial, until June 24th when the first judgment was entered, an appeal notice served September 19 and filed September 21, is within the ninety days limited by law.

INSURANCE (51)—CONSTRUCTION OF CONTRACT—TERM—VOYAGE IN MARINE POLICY. A marginal clause in a policy of marine insurance limiting the policy to the waters of southeastern Alaska, delivered after the sailing of the vessel, will prevail, although unknown to the owners, unless there are facts that estop the company from reliance on the provision.

SAME (10, 109)—AGENTS OR BROKER—RELATION TO PARTIES—STATUTES—KNOWLEDGE IMPUTED. Under the insurance code, Rem. Code, § 6059-1 *et seq.*, defining an "agent" as the person appointed and authorized to solicit applications and effect insurance, and a "broker" as a person not appointed who acts or aids in any manner in negotiating contracts of insurance for a party other than himself, and requiring larger license fees for brokers than for agents, an insurance concern that makes application to the agents of the company for a policy of marine insurance is a broker and acts as agent of the owners of the boat, so that its knowledge would not be imputed to the company.

SAME (108)—AGENTS—NOTICE—RELIANCE ON APPLICATION. Where a broker's application for marine insurance expressly specified that the boat was not to be employed in the waters of southwestern Alaska, and the surveyor's report gave the employment of the boat as both the waters of southeastern and southwestern Alaska, the agents of the company writing the insurance were not bound to make inquiry as to whether the insurance desired was that applied for, but were entitled to rely on the application, the rate of insurance being different.

Appeal from a judgment of the superior court for King county, Ralston, J., entered June 24, 1918, upon the verdict of a jury rendered in favor of the

[1]Reported in 178 Pac. 811.

plaintiffs, in an action on a policy of marine insurance, after a trial on the merits. Reversed.

*Bogle, Merritt & Bogle,* for appellant.

*Myers & Johnstone,* for respondents.

MAIN, J.—This action was brought by the plaintiffs as owners of the gasoline boat "Arnold", against the Pacific Marine Insurance Company, the defendant, on a policy of marine insurance. After the issues were framed, the cause came on for trial before the court and a jury. The trial resulted in a verdict in favor of the plaintiffs. The filing of the verdict and the entry of the judgment were ordered withheld pending the ruling of the court on the defendant's motion for judgment notwithstanding the verdict. Motion for a new trial was also made. Both the motions were by the court denied, and a judgment entered upon the verdict, from which judgment the defendant appeals.

The respondents open their brief with a motion to dismiss the appeal, claiming that the notice of appeal was not taken within the ninety days allowed by law. The verdict was rendered on the 24th day of April, 1918, and was ordered withheld from filing, pending a ruling on the motion for judgment notwithstanding the verdict. A motion for a new trial was also made. On the 19th day of June, 1918, an order was entered overruling both motions. On June 24th, 1918, a judgment was entered on the verdict. This is the first judgment that was entered. The notice of appeal was served on the 19th day of September, 1918, and filed on the 21st of that month. From these facts it is plain that the appeal was taken within ninety days from the entry of the judgment.

The facts in this case are in many respects the same as those recited in *Reynolds v. Canton Insurance Co.,*

98 Wash. 425, 167 Pac. 1115. The action is brought by the same parties, but against a different insurance company. It is for recovery for the loss of the Arnold by fire, which is the same boat and the same fire for which recovery was had in that case upon a policy of marine insurance issued by the Canton Insurance Company. In some respects, however, the facts in this case are materially different from those in the case referred to. This difference will be subsequently pointed out.

The facts which present the questions to be determined in this case may be recited as follows: On April 23, 1915, S. B. Reynolds and William Valen were the owners of the Arnold which was employed in carrying freight and passengers to Alaskan ports. On this day, or a day or two later, Reynolds applied to Norman Waterhouse & Company, a corporation, for insurance covering the Arnold in the sum of $5,000. The application recited:

"Have this Policy specify that the said Launch will sail from Seattle, Washington, to Cape Yagataga, Seward, Cook's Inlet, plying between said ports and other waters of South Eastern Alaska".

When the insurance was written, the policy or policies were directed to be delivered to the National City Bank, in Seattle. Waterhouse & Company caused the boat to be surveyed for the purpose of determining its seaworthiness. $2,000 of the insurance was written in the Canton Insurance Company, of which Waterhouse & Company was then the agent. It was this policy that was involved in the case above referred to. On April 30th, 1915, Waterhouse & Company applied to the firm of Bowden, Gazzam & Arnold for a policy in the sum of $1,000 in the Pacific Marine Insurance Company, the appellant. At this time

Bowden, Gazzam & Arnold were not the licensed recording or policy writing agents of the appellant, but were in some respects agents. The application by that firm was submitted to the home office of the company in Vancouver, B. C. The application was approved and a policy written for $1,000. The application which Waterhouse & Company presented to Bowden, Gazzam & Arnold contained this recital:

"Warranted during the currency of this policy vessel to be employed in the waters of Puget Sound, British Columbia and Southeastern Alaska".

The application was for insurance for the period of one year from April 30th, 1915. The policy written covered this period and contained, on the margin of the face of the policy, a recital as follows:

"Warranted to be employed during the currency of this policy in the waters of Puget Sound, British Columbia and Southeastern Alaska, inland waters not north of Wrangel Narrows".

The recital in the application and this recital on the margin of the policy are substantially to the same effect, which was that the boat was not to be covered by the policy if it was employed beyond the waters of Southeastern Alaska. In connection with making the application for the $1,000 insurance in the Pacific Marine Insurance Company, Waterhouse & Company submitted to Bowden, Gazzam & Arnold the surveyor's report covering the gas boat Arnold. This report was on a printed blank form and covered many details. On the line after the word "employment" in the report appeared this: "General trading, SouthE Alaska, Yakutat and Seward." Yakutat and Seward were in Southwestern Alaska. Waterhouse & Company was not the agent for the Pacific Marine

Insurance Company and was not known in the transaction by that company.

On July 21st, 1915, the Arnold, while near the entrance to Cook's Inlet and beyond the trading limits specified, both in the policy and in the application by Waterhouse & Company to Bowden, Gazzam & Arnold, was destroyed by fire. The location of the boat at the time of its destruction was in what is known as the waters of Southwestern Alaska.

The facts in this case differ from the facts in the *Canton* case in this: There the application was made by Reynolds to Waterhouse & Company, the agent of that insurance company. Here, the application was made by Waterhouse & Company, not an agent of the Pacific Marine Insurance Company, to Bowden, Gazzam & Arnold, as agents of that company, for the policy of insurance. The policy, after it was written, was forwarded to Bowden, Gazzam & Arnold, and by that firm delivered to Waterhouse & Company, who in turn delivered it to the National City Bank. When the policy was delivered, the boat had sailed on its last voyage and neither of the owners thereof knew of the marginal clause limiting the policy to the waters of Southeastern Alaska. This clause in the policy will prevail, and there is no liability, unless there are facts which would estop the company from reliance on that provision.

It may be admitted that, if Waterhouse & Company was the agent of the Pacific Marine Insurance Company, as related to this policy, under the evidence, the question of whether or not the insurance company was estopped would be one of fact for the jury and the verdict would be controlling. On the other hand, if Waterhouse & Company, so far as this policy is concerned, operated as a broker and was thereby the

agent of the owners of the boat, the knowledge of that company would not be imputed to the Pacific Marine Insurance Company. It becomes important, then, to determine whether Waterhouse & Company was a broker in this transaction, or became an agent.

In 1911, the legislature enacted what is known as the insurance code. Laws of 1911, Ch. 49, p. 161 (Rem. Code, § 6059-1 *et seq.*) Section 2 (Id. § 6059-2), is largely, if not entirely, devoted to the defining of terms which are used throughout the act. "Agent" or "Insurance Agent" is there defined as a person duly appointed and authorized by an insurance company, to solicit applications for insurance and to be known as "a soliciting agent", or to solicit applications and effect insurance in the name of the company, to be known as "a recording or policy writing agent". The term "Broker" or "Insurance Broker" is defined as a person, not being an appointed agent for the company in which insurance or reinsurance is effected, who "acts or aids in any manner in negotiating contracts of insurance or reinsurance or placing risks or effecting insurance or reinsurance for a party other than himself or itself". Section 17 (Id., § 6059-17), contains a schedule of fees covering, among other things, agent's licenses. The broker's license fee is much larger in amount than the others. Section 20 (Id., § 6059-20), among other things, provides that each and every broker, etc., doing business in this state "shall be subject to and governed by this act". Section 36 (Id., § 6059-36), provides that it shall be unlawful for any insurance company admitted to do business in this state, to write any policy of insurance covering risks located in the state, "except through or by a duly authorized licensed agent of such company residing and doing business in this

state". Section 44 (Id., § 6059-44), provides that every insurance agent shall annually, on or before the first day of April, procure a license from the insurance commissioner. In section 100 (Id., 6059-100), it is provided that any person or party who solicits fire, marine, etc., business, to be placed in an insurance company other than represented by him shall be deemed and considered as transacting a "brokerage business and shall be required to procure a broker's license." This section contains a proviso which it is unnecessary here to note because it does not apply to the facts in this case, as Bowden, Gazzam & Arnold were not licensed recording agents of the appellant.

Under this statute, it must be held that Waterhouse & Company in the transaction here involved, was acting as a broker. The purpose of the legislature apparently was to enact a complete insurance code which would cover the entire subject of insurance, as pointed out in *Davis-Kaser Co. v. Colonial Fire Underwriters Ins. Co.*, 91 Wash. 383, 157 Pac. 870, and in *State ex rel. North Coast Fire Ins. Co. v. Schively*, 68 Wash. 148, 122 Pac. 1020. The act expressly defines both insurance agents and brokers, requires that each, before doing business, shall obtain a license, and fixes the fees therefor. The undisputed facts show that Waterhouse & Company, under the provisions of the statute, was in relation to the transaction now before us, acting as a broker. Being a broker in this transaction, it was the agent of the owners of the boat when the application to Bowden, Gazzam & Arnold was made for the policy of insurance in the Pacific Marine Insurance Company. Any knowledge that had been conveyed to Waterhouse & Company but of which Bowden, Gazzam & Arnold knew nothing, could not be imputed to the appellant. Bowden, Gaz-

zam & Arnold had no knowledge of the employment of the boat or what the owners thereof desired in the matter of insurance, except what was conveyed to them through the application made by Waterhouse & Company and the surveyor's report. They did not know, and were not charged with knowledge, that Reynolds had made written application to Water-. house & Company for insurance upon the boat while it was in the waters of Southwestern Alaska.

Without defining the exact relations existing between Bowden, Gazzam & Arnold and the Pacific Marine Insurance Company, it may be said that it will be here assumed that any knowledge which that company possessed should be imputed to the appellant. The question then arises whether these agents of the appellant knew, or were charged with knowledge, that the owners of the boat contemplated employing it, during the period covered by the policy, in the waters of Southwestern Alaska, and desired the insurance to cover the boat while in those waters. To determine this question requires a consideration of the matters which were brought to the attention of Bowden, Gazzam & Arnold and the duty which such facts imposed upon that firm.

Waterhouse & Company being a broker representing the owners of the boat, had made a written application to them for the insurance, and expressly specified that the boat was not to be employed in the waters of Southwestern Alaska, where it was destroyed. The surveyor's report gave the employment of the boat as both the waters of Southeastern and Southwestern Alaska. Did it then become the duty of Bowden, Gazzam & Arnold to disregard the express statement in the application made by Waterhouse & Company, the agent of the respondents, as to what waters the

22—105 WASH.

policy was to cover, and make an inquiry as to whether the insurance desired was that applied for, since the surveyor's report recited the employment as being both the waters of Southeastern and Southwestern Alaska? The rate of insurance for the two waters was different, that for Southwestern Alaska being higher.

Bowden, Gazzam & Arnold were not charged with knowledge that the owners of the boat were contemplating a voyage to Southwestern Alaska. They had a right to assume that the application which they had received from the agent of the owners stated the kind of a policy that they desired, and the waters in which the boat would be covered by the insurance. They were not required to assume that different insurance was desired than that specified in the application, and were justified in causing the policy to be written in accordance with the application.

As we view the record, there is no substantial dispute in the controlling facts. There was no question to submit to the jury which would make the verdict controlling. Since Bowden, Gazzam & Arnold had no knowledge of the employment of the boat, or what waters the owners thereof desired the insurance to cover, except that contained in the application and the surveyor's report, and there being no material dispute of fact, we are of the opinion that the verdict and judgment cannot be sustained. Since, under the statute, Waterhouse & Company was a broker, it becomes unnecessary to review the decisions cited in the briefs to determine whether, prior to the enactment of the statute, it would be considered an agent or a broker.

Much reference is made in the briefs to the case of *Reynolds v. Canton Ins. Co.*, above referred to, but

in that case, as already pointed out, Waterhouse & Company was the agent of the company in writing the policy upon which the action was based, while here it was a broker.   There Waterhouse & Company, the agent of the insurance company, knew, or at least the jury had a right to find that it knew, that the boat was contemplating a voyage that would take it to the waters of Southwestern Alaska, and that its owners desired the insurance to cover it while in those waters. What is said in that case must be read in the light of the facts then before the court.

The judgment will be reversed and the cause remanded, with directions to the superior court to dismiss the action.

CHADWICK, C. J., MACKINTOSH, MITCHELL, and TOLMAN, JJ., concur.