## FIDELITY & GUARANTY FIRE CORPORATION OF BALTIMORE, MD., v. BILQUIST et al.

### No. 9267.

Circuit Court of Appeals, Ninth Circuit.

Jan. 31, 1940.

Wm. Hatch Davis, Guy B. Groff, and Ned W. Kimball, all of Seattle, Wash., for appellant.

Ray R. Greenwood and Walter B. Brown, both of Bremerton, Wash., for appellees.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This case is an appeal from a judgment of the United States District Court for

the Western District of the State of Washington reforming a contract of insurance and giving judgment to the insured upon the policy as reformed. The case was originally brought in the State Court but was removed to the United States District Court because of diversity of citizenship. It was before this court on a former appeal, 99 F.2d 333, 336. The judgment in favor of the insured was there reversed and the case remanded by this Court with directions: "to permit amendments to the pleadings and to determine the cause upon the theory of reformation".

Sometime prior to July 23, 1935, appellee John Myhre and appellee Bilquist bought real property at Manchester, Kitsap County, Washington, consisting of four lots with a building thereon, known as the Manchester Inn. On July 23, 1935, appellee executed a note secured by the property purchased to the Kitsap County Bank for $1,500 which was used as part of the purchase price for the property. Frank E. Langer was president of the Bank, and he was also an agent of appellant for soliciting and writing insurance. He asked and secured from Myhre permission to write the insurance on the property, required by the bank on all such property upon which a loan was granted. Langer had known for several years that the property in question had not been used exclusively as a dwelling place, but that it was intended to be and was actually used instead as an inn, hotel and tavern. He asked for no information but filled out a form which was sent to Seattle, and the policy in question was prepared and sent back to him. Langer signed the policy as resident agent, and placed it with the note and mortgage, then in the Bank's possession. The policy was plainly marked "Dwelling" in bold print on the outside, and the word "dwelling" was used many times in both the policy and the application in such a manner as to inform the casual reader that both instruments referred only to dwellings. The policy was shown to Myhre by Langer at the Bank, Myhre saw that Bilquist's name appeared as owner and told Langer "to change it so my name was on it". No other examination or objection was made. Langer took care of this by writing in Myhre's name as third mortgagee.

The policy as written was effective for three years from August 10, 1935, and insured for the amount of $2,500 "the two story shingle roof, frame building and ad-ditions in contact therewith while occupied only for dwelling house purposes" and insured in the amount of $1,500 the "household furnishings and personal effects * * * all only while contained in the above described dwelling house building". It was provided that the policy was subject to conditions therein stated, and that: " * * * no officer, agent, or other representative of this company shall have power to waive any provision or conditions of this Policy except such as by the terms of this Policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this Policy exist or be claimed by the insured unless so written or attached." It was further provided: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured * * *." There was no rider or agreement added to the policy providing otherwise.

In regard to the term of the policy and the premium paid, Myhre testified as follows: "I did not intend to have it for three years. I told Langer he could write the policy. I did not know whether he wrote it for one year or three years or ten years. I assumed it was for one year, but I made no attempt to have it renewed when the year was up. When I discovered the premium was only $77.00 I made no inquiry as to how long the policy ran. If I had supposed that it was a three year policy, it would have struck me as pretty peculiar. When I saw Exhibit 2, I was under the impression in a way that it was a one-year policy. I thought the rate was awfully cheap."

Prior to April 1, 1936, but subsequent to the issuance of the policy in suit, a small back-bar, from which beer and wine were served to the public, was installed on the ground floor of the Inn with refrigerating equipment and beer taps. Dancing was permitted in the same room. There was no stove or electrical apparatus, and no oil or combustibles kept in the barroom.

On the morning of September 12, 1936, a fire destroyed the property. The fire did

not start in the bar room. Litigation followed upon failure of the Insurance Company to pay the loss.

Pursuant to this Court's opinion in the first appeal from the judgment, the plaintiffs below petitioned the District Court for permission to file certain amendments to their complaint so as to present to said Court the issue of reformation of the insurance contract and the right to recover on the reformed policy. The District Court reformed that portion of the policy which read: "Does insure William E. Bilquist" so as to read: "Does insure William E. Bilquist and Bessie Bilquist, his wife, and John Myhre and Signe Myhre, his wife."

Also that portion of the policy which read: "$2500.00 on the two story, shingle roof, frame building and additions in contact therewith while occupied only for dwelling house purposes." so as to read: "$2500.00 on the two story, shingle roof, frame building and additions in contact therewith while occupied for the purpose of a hotel, inn, and tavern, and as a place of dwelling for operators thereof."

Also that portion of the policy which read: "$1500.00 on household furnishings and personal effects * * * owned by insured and/or members of his family; all only while contained in the above described dwelling house building, * * *" so as to read: "$1500.00 on household furnishings, hotel, inn, and tavern equipment and personal effects, * * * owned by insured and/or members of their families; all while contained in the above described hotel and inn buildings."

Also that portion of the policy which read: "The title to the insured property is in name of William E. Bilquist." so as to read: "The title to the insured property is in name of William E. Bilquist and Bessie Bilquist, his wife, and John Myhre and Signe Myhre, his wife."

■ With regard to all points raised in this case it is conceded that the law of Washington prevails. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The first question is whether the trial Court erred in decreeing reformation of this insurance policy. The prime factor in all cases justifying reformation of a written contract is an oral or implied agreement which the written contract was intended to express. The Washington Court has expressed this well established rule of law in the case of

Herzberg v. Moore, 153 Wash. 641, 280 P. 41, 42, as follows:

" 'Reformation is a proper remedy where the parties have reached a definite and explicit agreement, understood in the same sense by both, but by their mutual or common mistake, the written contract fails to express the agreement.' Section 11, Black on Rescission and Cancellation (2d Ed.).

" 'Where no question of fraud, bad faith or inequitable conduct is involved and the right to reform an instrument is based solely on mistake, it is necessary that the mistake be mutual, and that both parties understood the contract as the complaint or petition alleges it ought to have been, and as in fact it was except for the mistake.' 23 R.C.L. § 20, p. 327."

■ It is of course true in the instant case, as it was said in Miller v. United Pacific Casualty Insurance Co., 187 Wash. 629, 60 P.2d 714, 718: "It was never contemplated by the parties that they should execute an abortive or illegal contract." Still the finding that the policy as entered into is ineffective, does not justify the creation of an effective contract never agreed upon by either party.

■ Before we enter upon the propriety of the reformation decree it may be well to consider appellees' contention that by the "law of the case" as pronounced in our former decision the propriety of reformation was determined. We do not agree with this conclusion. All that we held there on this subject was that there could be no recovery under the written contract as it stood. That to properly present the issue tendered to and tried by the trial Court a reformation was necessary. Quoting from our previous decision in this case. Fidelity & Guaranty Fire Corporation v. Bilquist, 9 Cir., 99 F.2d 333, on page 335, we said: "With regard to reformation, appellant contends that it was entitled to its day in court upon that issue; that there was no allegation as to what terms of the policy were to be reformed, no offer to do equity by tendering the proper premium, and no prayer for equitable relief. At the argument appellees stated that they thought reformation was unnecessary, but if that argument did not prevail, the cause should be remanded to permit amendment of the pleadings. To prevent possible prejudice to appellant, we think the cause should be remanded, amend-

ment of pleadings permitted, and the cause disposed of on the theory of reformation."

■ The law of Washington is well settled to the effect that one who will not use the opportunities open to him to determine what his contract is, and if such opportunities would probably have revealed the defect, he cannot have reformation for mistake. In Johnson v. Spokane & Inland Empire R. Co., 104 Wash. 562, 177 P. 810, 812, the court said: "We have always held that a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to read the instrument, cannot claim to have been misled concerning its contents or to be ignorant of what is provided therein." And again in the same case: "The means of knowledge are equivalent to knowledge. A clue to the fact which, if followed up diligently, would lead to discovery, is in law equivalent to a discovery."

■ This doctrine was reaffirmed in the case of Kelley v. Von Herberg, 184 Wash. 165, 50 P.2d 23 where the court quoted the same language as used in the Johnson case, supra, with approval. Following this rule as established by the Washington court, the plaintiffs cannot claim ignorance of the coverage in the policy. Myhre intrusted the matter of writing the insurance to Langer, who wanted it for the protection of his Bank. Myhre gave Langer no instructions except as to the amounts of $2,500 and $1,500. Myhre's obligation to read the policy was the more imperative because of this. Certainly the insured has some duties as well as the insurer. The insured owes the obligation to examine his policy and to inform the insurance company wherein it is not as he intended it. Nor is this a case where the insured had to resort to the fine print on the policy to tell whom and what it covered. The fact that it covered a dwelling house was as apparent from a mere glance at the face of the policy as was the identity of the insured. To read at all the description and conditions of coverage in the inside of the policy would have disclosed that the property was covered *only* while used for dwelling house purposes. Further, common and ordinary prudence should have suggested to Myhre, when he found that Langer had left him out of the policy, to pursue his investigation so as to determine whether he was properly protected in other respects; yet he asked Langer to correct the policy only by putting his name in it. He was content to take chances on the rest of the policy. According to Myhre's testimony, the policy was a matter of extreme unimportance to him. He did not seek it. He paid for it apparently only because the bank required a policy. While it is possible to suppose that Myhre did see the description on the policy, though he says that he did not, it is still the duty of the insured to read his policy so as to ascertain the contents and if the policy is unsatisfactory, to object thereto at that time and not wait for the loss long afterward and then claim a right of reformation. The Washington case of Hayes v. Automobile Ins. Exchange, 126 Wash. 487, 218 P. 252, 253, states with reference to an insurance policy containing false statements which were claimed not to have been read: "Whether he read it or not is immaterial. It was his duty to read it, and the law says that he did read it." When the same case came before the court enbanc for a rehearing, 129 Wash. 202, 224 P. 594, 595, the court said: "Whether he read the policy or not is immaterial, for the law charges him with the duty of reading it." These statements are reaffirmed in Perry v. Continental Insurance Co., 178 Wash. 24, 33 P.2d 661 and McCann v. Reeder, 178 Wash. 126, 34 P.2d 461. To say in the instant case that had he read the insurance policy, the insured would not have been apprized of the mistakes claimed, if mistakes they were, is inconceivable. The Court of Washington further expressed itself in the case of Carew, Shaw & Bernasconi v. General Casualty Co., 189 Wash. 329, 65 P.2d 689, 694, disposing of this exact problem by stating: "Even if we did not agree with the trial court that the policy truly reflects the quotation made to Shaw, the negligence of appellant would defeat its action for reformation. Appellant is presumed and is required to know the provisions of the insurance contract, as it would any other written contract into which it enters. It will not do for appellant's vice president to say that he did not read the policy. Whether he or any of the other officers or agents of appellant read the policy is immaterial. It was appellant's duty to read the policy, and the law says that that was done. Hubenthal v. Spokane & Inland R. Co., 43 Wash. 677, 86 P. 955; Hayes v. Automobile Ins. Exchange, 126 Wash. 487, 218 P. 252; Perry v. Continental Insurance Co., 178 Wash. 24, 33 P.(2d)

661; McCann v. Reeder, 178 Wash. 126, 34 P.(2d) 461; Kelley v. Von Herberg, 184 Wash. 165, 50 P.2d 23."

It is trite to say that the Court cannot make a contract for the parties, and yet it seems clear that this would happen should the judgment of reformation be affirmed. How can it be decreed that Myhre agreed to pay a consideration of more than five times that which he actually did pay, $415.40 instead of $77; and that he agreed to purchase insurance for three years when he flatly testified as he did do, that he supposed the insurance ran for one year only.

Judgment reversed.