[No. 28191. Department Two. March 19, 1941.]

JOHN CARSTENSEN, *Respondent*, v. STANDARD ACCIDENT INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 111 P. (2d) 565.

*Hulbert, Helsell & Bettens* and *Paul Fetterman,* for appellant.

JEFFERS, J.—This action was instituted on May 3, 1940, by John Carstensen against Standard Accident Insurance Company by the filing of a petition wherein plaintiff asked for a temporary writ enjoining defendant from canceling a policy of liability insurance issued by defendant, covering two trucks of plaintiff. On the filing of plaintiff's petition, the court issued a writ enjoining defendant from canceling the policy, pending a further hearing, and ordering defendant to appear on May 20th and show cause, if any, why the injunction should not be made permanent.

The matter came on for hearing before the court on the amended petition of plaintiff and the answer of defendant, and after testimony had been offered by the respective parties, the court, on June 17, 1940, made and entered a decree, the material parts of which are as follows:

"It is ordered, adjudged and decreed that the temporary injunction heretofore granted be and the same is hereby made permanent as requested in the prayer for injunctive relief.

"It is further ordered that plaintiff be and he is hereby granted judgment against defendant for his costs herein taxed in the sum of $............................................"

Defendant has appealed from the judgment entered. Respondent has made no appearance in this court.

Respondent resides at Westport, Washington, and is engaged in the trucking business. On December 5, 1939, respondent submitted to the United States government a bid for hauling on a WPA project. The contract invitation furnished respondent provided that bids would be opened on December 7, 1939. Respondent in his bid stated that his bid must be accepted within one day after the bids were opened. Under this contract, respondent was to use two trucks for the period from January 4th to June 30th, 1940.

In order that respondent be enabled to operate his trucks upon the highways in carrying out this contract, it was necessary for him to get a permit from the department of public service of the state of Washington, and, before a permit would be issued, the department required that respondent file with it a policy of liability insurance. The matter of procuring this insurance was taken up with one John Huff, of Aberdeen. Respondent informed Huff of the contract with the government, and told him that he would like to get a policy which would be noncancelable during the life of the contract. Huff informed respondent that he did not know whether or not he could get him such a policy, but that he would try.

Huff then made out an application as requested by respondent, and took it to the Copeland agency, in Aberdeen, which agency sent the application to Lamping & Company, in Seattle, general agents for appellant. Lamping & Company wrote the policy in question, and sent it to the Copeland agency, with the following letter:

"As requested, we enclose herewith the above captioned policy, and whether or not you will file this policy with the Department of Public Service at Olympia will be between you and your client to determine. The reason for this is due to the fact that we cannot guarantee that this policy will remain in

effect for the period that the assured has his contract with the WPA, as the Home Office on receipt of our report will make their customary investigation and if moral and physical hazard of the risk is in order and it is found previous losses, if any, have not been excessive, the risk will meet with their approval . . .

"If your client is satisfied with the conditions outlined above, then it will be entirely in order to file the policy with the state."

Mr. Copeland, of the Copeland agency, testified that the policy and letter were received by him on December 29, 1939, and that the next day he had a talk with respondent, explaining to him the contents of the letter. He testified, however, that he was not sure whether or not he read it all to respondent and informed respondent that the policy did not have a noncancelable clause. Respondent denied any such conversation, and testified that the policy was mailed to him at Westport on the 4th or 5th of January; that he did not read the policy, as he relied on his agent; and that he did not know, until April 18th, that the policy could be canceled during the life of his contract, when he received word from the department of public service that the policy had been canceled. The policy was issued to cover the period from January 4, 1940, to and including January 3, 1941.

The letter above referred to was not admitted by the court, although the court commented thereon in its memorandum opinion.

Appellant makes the following assignments of error: (1) The court erred in finding that appellant was estopped to cancel its policy of insurance; (2) the court erred in holding that respondent was relieved of the burden of examining the policy delivered to him and was not chargeable with knowledge that it was cancelable in form; (3) the court

erred in finding that respondent had not been advised of the fact that appellant had refused to issue a noncancelable policy; (4) the court erred in entering an injunctive decree permanently enjoining the cancellation of the policy.

The policy in question, as issued by appellant and delivered to and received by respondent, on or about January 4, 1940, did not contain a noncancelable clause, but was a standard form policy, containing a cancelable clause, to which reference will hereinafter be made. Respondent testified that he did not read this policy, and until April 18, 1940, did not know that it could be canceled, at which time he received a letter from the department of public service, stating that his policy had been canceled, effective May 3rd.

That respondent, until April 18th, did not know that the policy could be canceled, when he received the letter from the department, was evidently not true, for he admitted, on cross-examination, that the policy had been canceled about a month previous to April 18th, and then reinstated by Lamping & Company, in order to help him out.

Respondent also testified that all of his conversations relative to the policy were with Huff. The testimony is undisputed that Huff was not licensed to represent appellant, and that the Copeland agency had no control over Huff. Huff acted as a broker, contacting prospects; and, when he obtained a client, he took the client's application, then turning this application over to the Copeland agency. If the application was accepted and a policy written, Huff received a commission only. Respondent gives as his excuse for not reading the policy, that he relied on his agent. We are satisfied that, under the facts in this case, Huff was an insurance broker and the agent

of respondent, and not the agent of either appellant or the Copeland agency. *Reynolds v. Pacific Marine Ins. Co.*, 105 Wash. 666, 178 Pac. 811.

It should be kept in mind that respondent, according to his own testimony, had this policy, or a copy of it, in his possession from January 4th to April 18th, and contends that he did not read it, in spite of the uncertainty of obtaining a policy with a noncancelable clause, and regardless of the fact that he had had six or seven other policies canceled on other work. As we have stated, the policy contained the usual provision for cancellation, and also a rider which states:

"The policy to which this endorsement is attached shall not expire, nor shall cancellation take effect, until after fifteen (15) days' notice in writing by the company shall have first been given to the Department of Public Service of Washington at its office in Olympia, Washington, said fifteen days' notice to commence to run from the date notice is actually received by the department."

There is no question but that proper notice of cancellation of the policy, effective as of May 3, 1940, was given.

■ ■ We are of the opinion that appellant was not estopped from canceling this policy, and we are further of the opinion that respondent failed to show a legal excuse for not reading the policy delivered to him and informing himself of its contents.

It does not appear but that Huff knew of the terms of the policy as actually issued; in fact, from the testimony, we think that Huff must have known that the policy contained the usual cancellation clause. As we read the testimony, it further appears that respondent talked with Huff after the policy was received by him and before it was sent to the depart-

ment. We are satisfied that knowledge of Huff was knowledge of respondent.

In *Carew, Shaw & Bernasconi v. General Casualty Co.,* 189 Wash. 329, 65 P. (2d) 689, speaking of the duty of the plaintiff to read its policy, we stated:

"Appellant is presumed and is required to know the provisions of the insurance contract, as it would any other written contract into which it enters. It will not do for appellant's vice-president to say that he did not read the policy. Whether he or any of the other officers or agents of appellant read the policy, is immaterial. It was appellant's duty to read the policy, and the law says that that was done. [Citing cases.]"

While the case of *Kelley v. von Herberg,* 184 Wash. 165, 50 P. (2d) 23, does not deal with an insurance contract, the rule therein announced, relative to the necessity of one who relies upon a written instrument to read and know the contents thereof, sustains our position here. See, also, *Perry v. Continental Ins. Co.,* 178 Wash. 24, 33 P. (2d) 661.

It appearing that the policy in question contained a plain and unambiguous provision authorizing appellant to cancel the policy, which would have been apparent to respondent had he read the policy, and it appearing that respondent has offered no legal excuse for not reading the policy, and further that appellant is not estopped from canceling the policy under the provisions thereof, it will be presumed that respondent accepted the policy as written, and it must follow that the court erred in enjoining a cancellation of the policy. It must be held that the policy was legally canceled as of May 3, 1940.

 While it might be thought that the main question herein presented has now become moot, in view of the fact that apparently respondent has completed his contract, and the term for which the policy

was written has expired, nevertheless, in view of the contingent liability which might arise under the policy, we have decided this case on the merits.

The judgment of the trial court is reversed, and the cause is remanded to the lower court, with instructions to enter judgment in accordance herewith.

ROBINSON, C. J., BEALS, MILLARD, and SIMPSON, JJ., concur.

[1] Reported in 111 P. (2d) 559.