[No, 28372. Department One. November 28, 1941.]

WILLIAM MOELLER et al., Respondents, v. CHRIST SCHULTZ et al., Appellants.[1]

[1]Reported in 119 P. (2d) 660.

*Brown & Huneke* and *Howard E. Phillips,* for appellants.

*Roy C. Fox,* for respondents.

DRIVER, J.—The plaintiffs, husband and wife, brought this action for reformation of an executory real estate contract. The defendants, also a marital community, have appealed from findings and judgment, in favor of the plaintiffs, entered after a trial to the court. As there will be no occasion to mention the wives of the parties, we shall refer to Christ Schultz as if he were the only appellant, and to William Moeller as if he were the sole respondent.

The pertinent facts are not in dispute. In August or September, 1939, the appellant made arrangements with a real estate agent to sell his farm lands in Lincoln county. The agent succeeded in interesting respondent in the property, and, after preliminary negotiations, the parties reached an agreement as to the terms of sale. They then went together to Davenport, the county seat of Lincoln county, where they employed a lawyer suggested by the appellant to reduce their agreement to writing. The attorney drafted the contract, taking the real property descriptions from documents sub-

mitted to him by appellant. The property consists of six hundred and forty acres in one tract, and approximately one hundred and sixty acres in another. The dwelling house and other farm buildings are on the smaller tract, which the witnesses at the trial called the "town quarter." For convenience, it will be so designated herein. By inadvertent oversight, about twenty-five acres of land in the town quarter, on which the buildings are situated, were not included in the description of the lands set forth in the contract. Before signing it, the respondent took the instrument to Ritzville to his own attorney, who examined it and suggested some changes not material here, but did not discover the deficiency in the description.

The contract dated September 29, 1939, provides that the purchase price, twenty-two thousand five hundred dollars, shall be paid as follows:

"The sum of $2,500.00 in cash, the receipt whereof is hereby acknowledged. The balance of the purchase price, and being the sum of $20,000.00, together with interest at the rate of five per cent per annum, is to be paid $4,500.00 in lawful money of the United States on or before the first day of October, 1940, which will leave on the principal of the purchase price the sum of $15,500.00 unpaid, which shall be paid as follows: The Southeast Quarter (SE¼) of Section Twenty (20), the South Half (S½) of Section Twenty-one (21), and the Northwest Quarter (NW¼) of Section Twenty-eight (28) of said lands [being all of the lands involved except the town quarter] are to be farmed by the parties of the second part after the custom of the country, beginning with the date hereof, alternately cropping and summer-fallowing the same, and the parties of the second part are to harvest all crops hereafter raised thereon and to deliver to the parties of the first part one-half thereof in bulk, free and clear of all costs and charges, at the warehouse of the United Grain Growers, Inc., at Harrington, Washington, in due and proper season, and to cause negotiable warehouse re-

ceipts therefor to be issued to the parties of the first part and delivered to the escrow holder hereinafter named for the purpose of settlement between the parties."

The contract further provides that, when respondent pays three thousand of the four thousand five hundred dollars due October 1, 1940, the appellant shall convey to him,

". . . by good and sufficient warranty deed . . . that portion of said premises described as follows, to-wit: [here follows a description of the town quarter, omitting the twenty-five acres previously mentioned] . . .

"It is further agreed that the parties of the first part have, contemporaneous herewith, executed to the parties of the second part their two warranty deeds. One for the said lands in Sections Twenty (20), Twenty-one (21), and Twenty-eight (28), and the other for the lands in Section Twenty-two (22) [the town quarter], and that said warranty deeds, together with this contract, are to be left in escrow with the Harrington Branch of The Old National Bank & Union Trust Company at Harrington, Washington, which is hereby constituted the escrow holder and agent of the parties hereto for the purpose of applying the proceeds of the sale of the crops in accordance with the terms hereof, . . . The escrow holder is authorized and instructed, when full payment has been made for said premises in accordance with the terms hereof, to deliver the deed or deeds, as the case may require, to the parties of the second part."

The contract contains the usual forfeiture provision, to the effect that, in case the respondent fails to comply with any of its terms, the appellant shall have the right to cancel and terminate the contract and retain all payments made thereunder as liquidated damages: "Provided, however, this forfeiture agreement shall have no effect as to any land which has theretofore been conveyed in accordance with the terms hereof."

The two warranty deeds mentioned in the contract were deposited with the designated escrow holder, but the deed to the town quarter omitted the same twenty-five acres which had been left out of the contract.

In the fall of 1939, respondent entered into possession of the premises, including the twenty-five acres not described in the contract. He did not discover the mistake in the real estate description until the spring of 1940, when he immediately called it to the attention of the appellant. The latter admitted that it was an "oversight"; that a mistake had been made in not including the twenty-five acres. But, when, at his request, the same attorney who had prepared the original agreement drafted a corrected contract, the appellant refused to sign it unless certain changes were made in the terms of payment. In July, 1940, respondent instituted the present action. Thereafter, respondent paid, through the escrow holder, a sum representing one-half the gross proceeds of the crops for the season of 1940, which payment appellant accepted and retained.

On November 15, 1940, appellant served upon respondent a written notice to the effect that the real estate contract would be forfeited if the respondent did not, within ten days after that date, deposit with the bank designated as escrow holder the sum of four thousand five hundred dollars to cover the payment due on October 1st. On November 23rd, respondent paid the stated sum to the bank, but with certain written conditions, or reservations, which will be discussed later on in this opinion. November 26th, the appellant served a notice of forfeiture of the contract and demand for possession upon the respondent. On December 9th, appellant served upon respondent his answer and a cross-complaint, seeking to have his cancellation of the contract confirmed, his title quieted, and possession of the premises restored to him. The case was tried

in February, 1941, and the court ordered that the real estate contract and the deed to the town quarter be reformed so as to include therein the omitted twenty-five acres, and denied appellant relief on his cross-complaint.

Where both parties have an identical intention as to the terms to be embodied in a proposed written contract and a writing executed by them is materially at variance with such intention, a court of equity will reform the writing so as to make it express the intention of the parties if, as in the instant case, innocent third persons will not be unfairly affected thereby. 2 Restatement of the Law of Contracts, p. 968, § 504. This well-settled rule has been recognized in this state by a long line of decisions. *Jenkins v. Jenkins University,* 17 Wash. 160, 49 Pac. 247, 50 Pac. 785; *Dennis v. Northern Pac. R. Co.,* 20 Wash. 320, 55 Pac. 210; *Reid v. Slocum,* 34 Wash. 173, 75 Pac. 679; *Preston v. Hill-Wilson Shingle Co.,* 50 Wash. 377, 97 Pac. 293; *Silbon v. Pacific Brewing & Malting Co.,* 72 Wash. 13, 129 Pac. 581; *Muerling v. Colsen,* 79 Wash. 54, 139 Pac. 616; *Chapman v. Milliken,* 136 Wash. 74, 239 Pac. 4; *Miles v. Craig,* 147 Wash. 530, 266 Pac. 182.

Appellant concedes that both parties to the contract intended to include therein the twenty-five acres in question. He maintains, however, that respondent is not entitled to reformation for two reasons: First, he says that respondent could readily have discovered the mistake in the real estate description had he properly examined the "Lincoln County Atlas" (which respondent testified he did consult), or the county treasurer's tax records, or the county assessor's plat, and that he was negligent in failing so to do. Whether or not respondent's failure to do those things under the circumstances can be said to constitute negligence on his part, clearly, it did not deprive him of his right to

reformation of the contract. *Rosenbaum v. Evans,* 63 Wash. 506, 115 Pac. 1054; *Carlson v. Druse,* 79 Wash. 542, 140 Pac. 570.

"The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof." Restatement of the Law of Contracts, p. 977, § 508.

To the same effect, see 5 Williston on Contracts, p. 4447, § 1596.

■ Second, appellant argues that, under the circumstances, the contract was so unconscionable that it should not be enforced. Appellant was near eighty years of age, and respondent was a much younger man, it is true, but there is not a shred of evidence that appellant was in any respect incapable of attending to his business affairs. The parties were strangers before they started the negotiations which culminated in the contract. To draw up the instrument, the appellant selected a lawyer who had previously done some legal work for him, but who had never before met the respondent. The record fully supports the following comment which the trial court made in orally announcing its decision: "There isn't a scintilla of evidence of over-reaching in this case, of taking advantage of the defendant [appellant] by the plaintiff [respondent]." Doubtless, some of the terms of the contract could well have been more favorable to appellant, but none is of such a character as to render it unenforcible.

Appellant particularly complains that the contract does not require respondent to make a minimum annual payment and does not fix a definite time for final payment of the balance of the purchase price, respondent being required to pay thereon only one-half of the annual crops produced on the premises. As has been noted, substantial initial and deferred cash payments

were required. The worst that can be said of the crop-payment provision is that it makes the time of final performance of the contract extremely uncertain, depending upon future crop yields and grain prices. As such factors are variable and unpredictable, the time may be very long or comparatively short. Since, so far as the record discloses, the parties were capable of contracting, and dealt at arm's length, that feature of the contract does not affect its validity. We think the trial court properly concluded that respondent was entitled to reformation of the contract.

■ Finally, appellant contends that he was within his rights in declaring a forfeiture of the contract, and that the lower court erred in denying him relief under his cross-complaint.

When respondent instituted this action for reformation, he had made the down payment, no other payment had matured, and he was not in any respect in default. Subsequently, he seasonably made the payment of one-half of the proceeds of the 1940 crop. Also, before the date of appellant's final notice of forfeiture, respondent deposited with the escrow bank the four thousand five hundred dollar payment due October 1, 1940, but he made the deposit conditionally. He gave the bank written instructions to retain possession of the money until the termination of his pending suit, or until the appellant had deposited in escrow: (1) a warranty deed to the town quarter, including the omitted twenty-five acres; (2) an abstract of title thereto (when three thousand dollars of the deposit would be turned over to appellant); (3) a deed to the other six hundred forty acres of the land covered by the contract; and (4) an abstract of title thereto (when the remaining fifteen hundred dollars deposited would be turned over to appellant).

Conditions two and four were not in conformity with the terms of the contract, and should not have been imposed by respondent (appellant had already complied with condition three). Although the contract provides that respondent shall be entitled to receive a deed to the town quarter for three thousand dollars of the October 1st cash payment, it does not require appellant to furnish a separate abstract of title to that tract. It specifies only that "an abstract of title" shall be delivered to respondent after he has fully complied with all the terms and conditions of the contract and has paid the full purchase price. There is no provision for placing the abstract of title in escrow.

However, although the respondent's tender of the October 1st cash payment was not in all particulars in accordance with the terms of the contract, it does not necessarily follow that appellant's attempted forfeiture of the contract should be upheld by a court of equity. The province of the remedial right to reformation is to make a contract express the bargain which the parties desired to put in writing. It would be an idle gesture for the court to grant reformation of a contract and then to deny to the prevailing party an opportunity to perform it as modified. The respondent has had no such opportunity. Even had he made an unconditional tender of the October 1st payment, he would not have received what the parties mutually intended he should have; namely, a deed of conveyance to the town quarter. The deed placed with the escrow holder, as has been stated, did not cover twenty-five acres of that tract.

That portion of the judgment of the trial court ordering reformation of the real estate contract and of the warranty deed to the town quarter is affirmed. That portion of the judgment denying appellant recovery on his cross-complaint is likewise affirmed, and the re-

spondent is granted thirty days after the remittitur from this court is filed in the superior court to tender the four thousand five hundred dollar cash payment due October 1, 1940, without the conditions or reservations referred to in this opinion and designated as conditions two and four, by depositing the payment with the escrow holder or by withdrawing such conditions from the deposit which he has already made. In case of the respondent's failure so to do, the appellant may declare the real estate contract forfeited, and such declaration of forfeiture shall be effective as of November 26, 1940.

The respondent will recover his costs in this court.

ROBINSON, C. J., STEINERT, MAIN, and BLAKE, JJ., concur.

