Robert D. MALAND and Bonnie J. Maland, Appellants,

v.

HOUSTON FIRE AND CASUALTY IN-SURANCE COMPANY OF FORT WORTH, TEXAS, a Corporation, and Patricia Royston, Appellees.

No. 16402.

United States Court of Appeals
Ninth Circuit.

Jan. 25, 1960.

Rehearing Denied March 9, 1960.

Hamblen, Gilbert & Brooke, Robert E. Brooke, Spokane, Wash., for appellants.

Paul F. Schedler, Nappi & Triesch, Del Cary Smith, Jr., Spokane, Wash., for appellees.

Before BONE, POPE and HAMLEY, Circuit Judges.

BONE, Circuit Judge.

Appellant Robert Maland is a partner in a business firm known as City Motors, which buys and sells used cars in Spokane, Washington. In ordering automobile liability insurance for City Motors, Maland and J. Tom Clinton, an agent for appellee insurance company, came to a mutual understanding that the policy would cover all cars owned by the partnership and held for purposes of resale—insurance providing "Division I" coverage. Inadvertently, Clinton ordered a policy which protected only against liability incurred through the use of automobiles *not* owned or hired by the insured, and accordingly, on November 1, 1956, appellee issued to City Motors a standard automobile garage liability policy, affording what is called "Division II" coverage. This policy clearly stated that the hazards guarded against were *only* those arising through the operation of "automobiles not owned or hired" by the insured. Four months later, while driving a car owned and held for resale by City Motors, Mrs. Maland ran into and injured Patricia Royston. Appellants subsequently instituted this action to reform the contract so as to reflect the mutual intent of the parties, thereby insuring Mrs. Maland against liability for Miss Royston's injuries. Neither appellants nor appellee's agent had read the policy prior to the accident, and the trial court found that had Maland looked his contract over, he would have easily discerned the error in coverage.[1] Suit was brought under the Declaratory Judgment Statute, 28 U.S.C.A. § 2201; the parties are of diverse citizenship.

The sole question in this case is whether or not, under Washington law, an insured is barred from seeking reformation of a contract entered into under a mutual mistake by his or its failure to read the policy and to discover the manifest error. The treatment of this particular problem by the Washington Supreme Court constitutes a long and tangled story.

In Hubenthal v. Spokane & Inland R. Co., 1906, 43 Wash. 677, 86 P. 955, the Washington Supreme Court held that one who signed a written contract granting an easement over his land could not claim that he was either defrauded or mistaken concerning the terms of the contract if he did not take advantage of readily available opportunities to check up on the representations of the other contracting party, especially when a mere reading of the contract would reveal the defect complained of. Earlier rulings to the same effect were cited. However, five years later, when a defendant in an action to reform a deed argued that plaintiff's failure to read the deed, which plaintiff himself had drawn, constituted

---

1. Some evidence showed that Clinton had advised Maland that the policy would not cover automobiles privately owned by the partners of City Motors, and had Maland read the policy he might have erroneously interpreted it as covering all cars not *privately* owned or hired. The trial court found, however, that the error in coverage was unmistakable, and we do not think the evidence warrants overturning his conclusion.

negligence and barred reformation, the court went the other way. While certain (unmentioned) authorities tending to support defendant's contention state the correct rule for other kinds of contracts (said the court), the failure to read a deed would not bar reformation of an error in describing the land conveyed. Mistakes in description were too easily made. Rosenbaum v. Evans, 1911, 63 Wash. 506, 115 P. 1054. To the same effect, see Carlson v. Druse, 1914, 79 Wash. 542, 140 P. 570.

In Silbon v. Pacific Brewing & Malting Co., 1913, 72 Wash. 13, 129 P. 581, plaintiff sought money due under a written lease, and defendant asked for reformation, contending that through a mutual mistake the lease did not embody the actual agreement between the parties. The court in granting defendant's plea noted that although evidence indicated negligence on the part of defendant's agent in failing to discover that the lease did not express the true agreement of the parties, such negligence was not sufficient to estop defendant from having the instrument reformed. Whether or not the defect would have been revealed through a reading of the lease the court did not say; yet since defendant, rather than plaintiff, had drawn the lease, and since the negligence mentioned by the court occurred at the time the written instrument was presented to defendant's agent for execution, a reading of the lease would seemingly have been enough to reveal its deviation from the parties' true intent. In a similar situation two years later—defendant was seeking reformation of a conditional sale contract sued upon by plaintiff—the court found insufficient evidence of an alleged fraud. In so holding the court noted that the defendant could and did read part of the contract, and that if the rest of the agreement did not express his intention, the fault was his own. Northwest Motor Co. v. Braund, 1916, 89 Wash. 593, 154 P. 1098. In neither of these decisions was there any reference to the pertinent language in the Hubenthal or Rosenbaum cases, supra, or to any other authority in point.[2]

In Johnston v. Spokane & Inland Empire R. Co., 1919, 104 Wash. 562, 177 P. 810, the position taken in Hubenthal, supra, was reiterated. Plaintiff claimed that he had been defrauded in regard to certain securities bought from defendant. But the court opined that one who has the opportunity to read an instrument cannot claim to have been misled or to be ignorant of its contents. A ready opportunity to discover was, to the court, legally equivalent to discovery itself.

In Union Machinery & Supply Co. v. Taylor-Morrison Logging Co., 1927, 143 Wash. 154, 254 P. 1094, two promissory notes signed by a defendant who alleged fraud were reformed. The notes contained fine print practically hidden from view, and the court decided that defendant was to be excused for his failure to notice the extraordinary provisions in the fine print. Manifestly, if negligence had constituted no bar to reformation, the court would not have found it necessary to assert defendant's blamelessness. And in Bjorklund v. Continental Casualty Co., 1931, 161 Wash. 340, 297 P. 155, the court refused to reform an insurance policy on grounds of fraud because the insured was aware of the discrepancy in the policy but had done nothing about it. In the face of such evidence the insured could not claim he was defrauded. Here the court specifically noted that the same rules of law which apply to the reformation of other written agreements apply equally to insurance policies.

In Kelley v. Von Herberg, 1935, 184 Wash. 165, 50 P.2d 23, defendant sought reformation of a lease upon alternative grounds of mutual mistake or fraud. The court found no mistake on the plaintiff's part, thereby negating the allegation of mutual error. Nor could defendant's claim of fraud be sustained, for if he had read the lease, he would have discovered its oppressive terms. Relying

2. Rosenbaum was cited in the Silbon opinion solely in support of the proposition that the power to reform a written instrument existed in Washington.

on Hubenthal, supra, the court repeated that one who does not utilize opportunities to discover another's fraud cannot claim to have been misled.

It may appear safe to say that at this juncture in the development of the Washington case law a party's failure to read a written instrument precluded his action to reform it. The Rosenbaum case, supra, excepted the instance where reformation of an error in the description of land conveyed by deed was concerned, but negligence in regard to all other written agreements, *including insurance policies*, apparently incurred harsh consequences. However, the only Washington cases which involved mutual error, Rosenbaum and Silbon, were resolved in favor of the party seeking reformation despite his negligent failure to ascertain the defects in the instrument. And in both these cases the party asking reformation had not only the opportunity to discover the error, but had actually drafted the contract claimed to be deficient. In all the other cases, either fraud or unilateral mistake was involved; in each case one party, honestly or not, had intended the agreement to stand as written.

With this background in mind we move to two cases heavily relied upon by appellee insurance company: Carew, Shaw & Bernasconi, Inc. v. General Casualty Co., 1937, 189 Wash. 329, 65 P.2d 689, and Fidelity & Guaranty Fire Corp. v. Bilquist, 9 Cir., 1940, 108 F.2d 713. In Carew the insured contended that it and the insurer had agreed to insure a safe against burglary, but that the policy as written only insured a burglar-proof chest *located inside the safe*. The insured did not read the policy and, of course, the safe was burglarized. The court held that the insured had failed to show by clear, convincing evidence either mistake or fraud in the issuance of the policy. Where the evidence is in conflict and doubt surrounds the intent of the parties, reformation would not be granted. Moreover, said the court in dictum, even if the insured were led to believe that *the entire safe* was covered, its negligence in failing to read the policy would preclude its action for reformation. The insured had a duty to read its policy, and the law presumes that such duty was fulfilled.[3] In Bilquist a fire insurance policy was clearly marked to cover only premises used as a dwelling-house. Both the insured and the insurer's agent knew, however, that the property for which the insurance was ordered was a hotel and tavern rather than living quarters. The insured never read the policy and contended—in his suit for reformation after the fire—that the parties had made a mutual mistake. This court, applying Washington law, held that when a party to a contract does not make use of readily available opportunities to determine the contents of the contract, he cannot obtain reformation on grounds of mistake.[4]

In Carew, the court found that both parties intended the policy to be just as it was written, and the dictum regarding plaintiff's negligence was apparently predicated on the hypothesis that the insured was misled concerning the coverage it was to receive. Nowhere in the opinion does the court intimate that a mutual error had been made. In Bilquist, however, this court applied the Washington rule—that negligence precludes reformation—in a case which did

3. In support of this statement the court cited Hubenthal and Kelley, discussed in text, supra, and three other Washington decisions: Hayes v. Automobile Ins. Exchange, 1923, 126 Wash. 487, 218 P. 252; Perry v. Continental Ins. Co., 1934, 178 Wash. 24, 33 P.2d 661, and McCann v. Reeder, 1934, 178 Wash. 126, 34 P.2d 461. The three cases last mentioned all deal with a failure by an insured to read warranties on his signed application for insurance. In McCann the insured did not even deny that he had read the warranties. The insurer in these cases clearly intended the warranties to stand as written; there was undoubtedly no mutual mistake. And so the court held the insured responsible for the warranties made above his signature.

4. Here the court relied only on Carew and Kelley, discussed in text, supra.

involve a mutual mistake; both the insured and the insurer's agent believed that the policy there in controversy covered the premises which were destroyed in the fire. See Fidelity & Guaranty Fire Corp. of Baltimore v. Bilquist, 9 Cir., 1938, 99 F.2d 333, 335. The federal court thus took a step which the state court had not yet taken. To ascertain whether Washington has adopted or rejected this extension, we must of course look to succeeding state court decisions.

Mutual mistake afforded grounds for reformation of a description of land in an executory real estate contract in Moeller v. Schultz, 1941, 11 Wash.2d 416, 119 P.2d 660. Defendant there contended that the plaintiff had failed to examine a county atlas, tax records, or the assessor's plat; any one of which would have demonstrated the error in the contract. But the court, citing Rosenbaum, asserted that whether or not such failure constituted negligence on the plaintiff's part, it did not deprive him of his action for a reformation. A quotation from the Restatement of Contracts § 508 followed: "The negligent failure of a party to know or to discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof." Of course, Moeller did not involve a failure to read, and it did deal with error in a description of realty —harking back to the distinction made earlier in Rosenbaum. Nonetheless, the court's adoption of § 508 of the Restatement of Contracts, a section patently applicable to all contracts entered into under a reciprocal misapprehension, indicates an extension of the Rosenbaum rule to encompass all cases of mutual mistake.

This attitude is also implicit in two more recent Washington decisions involving mutual error. In Lofberg v. Viles, 1951, 39 Wash.2d 493, 236 P.2d 768, the court reformed a realty contract which failed to state from which side of a lot a certain fifteen feet of land was to be taken. The party seeking reformation had read the contract, yet reformation was granted without any mention of possible negligence on plaintiff's part. And in Bergstrom v. Olson, 1951, 39 Wash.2d 536, 236 P.2d 1052, a written business agreement was reformed to reflect the true intent of the parties. The problem was whether defendant had bought a half interest in plaintiff's business or had contributed cash to a joint venture. The court held that although the terms of the written agreement showed without ambiguity that defendant had purchased a share of the business, extrinsic evidence demonstrated that the parties intended to enter a joint venture. Both parties had obviously read the agreement, yet again the court made no mention of plaintiff's negligence.

Where a mutual mistake is involved, we think that reformation may be granted under Washington law regardless of the negligence of the party seeking it.[5] Such a position was taken

5. In comparison, recent Washington cases involving fraud cast a different shadow. In Meyer v. Young, 1945, 23 Wash.2d 109, 159 P.2d 908, the court reformed a realty contract on grounds of fraud in the face of defendant's contention that plaintiff's negligence should bar his suit. Where a party's negligence does not arise to the dignity of *a violation of a legal duty,* said the court, it will not preclude reformation of an instrument for fraud. Yet the language of this opinion appears to be carefully limited to the particular facts in the case. The court held that a failure to detect an error in the description of land by referring to the plat on the fifth page of the title insurance policy was not negligence of a character which would bar reformation for fraud. Subsequently, in Hesseltine v. First Methodist Church, 1945, 23 Wash.2d 315, 161 P.2d 157, the court noted that the plaintiffs would not be heard to complain of fraud where they had failed to read an instrument which was manifestly a deed of trust yet had signed it allegedly thinking it to be a will. And in Dixon v. MacGillivray, 1947, 29 Wash.2d 30, 185 P.2d 109, the court remarked that the only time a party is under a duty to discover fraud is when both parties have an equal opportunity to ascertain the truth of the matter. See also Carstensen v. Standard Accident Insurance Co., 1941, 8 Wash.2d 72, 111 P.2d 565 (unilateral mistake—duty to read). Clearly then,

by the Washington court in Moeller v. Schultz, supra, and is implicit in Bergstrom v. Olson, supra; Lofberg v. Viles, supra; Silbon v. Pacific Brewing & Malting Co., supra; and Rosenbaum v. Evans, supra.[6] We conclude that the decision of this court in Fidelity & Guaranty Fire Corp. v. Bilquist, 9 Cir., 1940, 108 F.2d 713, supra, has not been adopted by Washington courts and does not state present Washington law.

The decision of the district court is reversed.

for policy reasons about which we do not speculate, the negligence of a party seeking reformation may in some cases bar his action under Washington law, but only when fraud or unilateral error is involved.

6. A similar rule obtains in a majority of the other states. See Maryland Casualty Co. v. Morris Oil Corp., 4 Cir., 1956, 233 F.2d 291 (Virginia law); Interstate Indemnity Co. v. Simpson, D.C.D.Or.1957, 155 F.Supp. 855 (Oregon law); Mogil v. Maryland Casualty Co., 1947, 147 Neb. 1087, 26 N.W.2d 126.